Orval C. LOGUE, ind. and as Personal Representative of His Deceased Son, Reagan Edward Logue

v.

UNITED STATES of America.

Civ. A. No. 69–C–106.

United States District Court, S. D. Texas, Corpus Christi Division.

Feb. 16, 1971.

Wm. R. Edwards, Corpus Christi, Tex., and Marvin Foster, Jr., San Diego, Tex., for plaintiff.

George Pain, Houston, Tex., for defendant.

MEMORANDUM AND OPINION

OWEN D. COX, District Judge.

Reagan Edward Logue, a Federal prisoner, hanged himself in the Nueces County jail. His adoptive father, Orval C. Logue, has brought this suit under the provisions of the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., to recover damages from the government under the Texas Wrongful Death Act, Article 4671 et seq., Revised Civil Statutes of Texas (1925), as amended, for himself and for Reagan Edward Logue's mother, Alice Maire Logue, now Mrs. Blouin, and on behalf of the Estate of Reagan Edward Logue for the decedent's pain and suffering and for funeral expenses. This Court has full and complete jurisdiction of the subject matter of the parties and venue properly lies.

The Court finds the following facts surrounding the death of Reagan Edward Logue:

1. On May 22, 1968, the deceased, then eighteen years of age, was arrested by Deputy United States Marshal Del W. Bowers in Corpus Christi, Texas, on a bench warrant charging the said Reagan Edward Logue with conspiracy to smuggle 229 pounds of marijuana into the United States, and he was placed in the Nueces County jail as a Federal prisoner.

2. At about 3:00 p. m. the next day, the prisoner attempted suicide by inflicting a serious cut upon his left arm. Thereafter, he was transported from the jail to Memorial Hospital, where he was treated for the laceration and admitted with a diagnosis that he was acutely psychotic.

3. On May 24, 1968, Deputy Marshal Bowers, after conferences with his superiors in the Marshal's Office and with Shannon Gwin, M.D., the prisoner's medical doctor, decided to return the prisoner to the Nueces County jail. Dr. Gwin recommended to the Deputy Marshal that the prisoner remain in the hospital until he could be transferred to another medical facility. At this time, the prisoner had serious suicidal tendencies and his condition was not improved over what it had been when he was admitted to the hospital the day before.

4. At about 3:30 p. m. on the same day, Dr. Gwin, because he thought he had no choice, released the prisoner from the hospital to Deputy Marshal Bowers, who returned him to the Nueces County jail, pending his transfer to a Federal mental institution.

5. Deputy Bowers knew the prisoner had serious suicidal tendencies and should be protected against injuring or killing himself, and at Deputy Bowers' request, the prisoner was put in a cell which had been stripped of everything except the bunk with a mattress, the commode and wash basin. The steel walls and ceiling of the cell were symmetrically perforated with round holes about the size of a half dollar. There was no ceiling light fixture. No specific arrangements were made by the Deputy Marshal for constant surveillance of the prisoner, and this was negligence.

6. The Sheriff's employees in the jail knew the prisoner had serious suicidal tendencies, and they did make precautionary surveillance checks after his return from the hospital, but those surveillance checks were made usually in connection with bringing some other prisoner onto the floor where Reagan Edward Logue was incarcerated. This was inadequate surveillance and was negligence.

7. When the prisoner was returned to the Nueces County jail on May 24, 1968, he had a long Kerlix bandage on his arm. At about 4:30 p. m. on the afternoon of the next day he removed the bandage and hanged himself with it. Each act of negligence above mentioned was a proximate cause of his death.

8. During the above mentioned times, there was a contract for service in non-Federal institutions between Defendant United States of America and Nueces County, Texas, whereby the Sheriff of Nueces County agreed, among other

things, to keep custody of Federal prisoners in the Nueces County jail at Corpus Christi, Texas. At all times material hereto, the Deputy United States Marshals involved in the arrest and detention of Reagan Edward Logue were acting within the scope of their employment for the United States government; and the members of the Sheriff's Department were acting within the scope of their employment.

The Court draws the following conclusions of law from the facts heretofore set out:

1. The decision of Deputy United States Marshal Bowers and his superiors to remove Reagan Edward Logue from the hospital to the Nueces County jail was a discretionary act within the purview of 28 U.S.C. § 2680; but, that decision having been made, the Deputy Marshal had a duty to see that reasonable care be taken at the jail to protect the prisoner against another suicidal attempt. Smart v. United States, 10 Cir., 207 F.2d 841; Costley v. United States, 5 Cir., 181 F.2d 723.

2. The government is not an insurer of the safety of its prisoner; however, once it became aware, through the knowledge of the Deputy Marshals involved, of the psychotic condition and suicidal tendencies of this prisoner, the reasonable care which the government was required to take was that care necessary to make certain the prisoner did not commit suicide while in jail. Lange, et al., v. United States, D. C., 179 F. Supp. 777; United States v. Gray, 10 Cir., 199 F.2d 239.

3. The fact that there was a contract existing between Defendant and Nueces County regarding the care and custody of Federal prisoners in the status of Reagan Edward Logue who are kept in the Nueces County jail, did not relieve the Defendant of its responsibility to such prisoners, and particularly to Reagan Edward Logue, under 18 U.S.C. § 4042. Williams v. United States et al., 9 Cir., 405 F.2d 951.

4. Whether the Deputy United States Marshal failed to adequately inform the Nueces County jailer as to the necessity for constant surveillance, or the jailer failed to carry out the suggested constant surveillance needed for the protection of the prisoner, makes no difference. Williams v. United States, supra; In re Morgan, D. C., 80 F.Supp. 810. The government was bound by those negligent acts in either instance.

5. The pre-existing mental condition of the prisoner and mistakes of the natural mother and the adoptive father in the guidance and medical attention provided for their deceased son are not pertinent. The negligence of the United States was the proximate cause of Reagan Edward Logue's death.

The Court must now determine the extent of the Defendant's liability to the Plaintiffs, and this is not an easy task. The adoptive father and the natural mother of the deceased Reagan Edward Logue may recover only the pecuniary benefits they might expect to receive. The determination of their recovery cannot be left to mere guess or conjecture, nor prompted by sympathy.

This young man was first arrested for possession of marijuana in 1967 and thereafter he was extensively involved in drug traffic, as a user and a pusher, in Corpus Christi and Austin, Texas. He had already pleaded guilty to possession of LSD for the purpose of sale in the United States District Court in Austin, Texas, but was not yet sentenced when he was arrested pursuant to an indictment in the Federal Court in Laredo, Texas, for smuggling marijuana into this country. At the time of this last arrest, on May 22, 1968, he was in a serious psychotic state from the ingestion of LSD or some other toxic agent. All conditions indicated it was extremely unlikely the deceased, had he lived, would have rendered any valuable services for the benefit of either Plaintiff, over and above their expenses, including attorneys' fees, during the re-

maining two and one half years of his minority.

Any pecuniary advantage to the Plaintiffs after that would obviously depend upon his rehabilitation. Both Dr. White, an intern who saw him only one time and then briefly, and the probation officer felt he could be rehabilitated. This evidence was not impressive. However, medical science continues to progress and, if the young man had lived, the Court cannot say he would not have returned to reality, and earned his own way. He did work as a boilermaker at sixteen and seventeen years of age and was a satisfactory employee. But, whether or not he would have stayed out of trouble, or at some later date accomplished his death, his past record makes the future very uncertain.

It is also important to consider what pecuniary damages the Plaintiffs would have suffered. Hernandez v. United States, D. C., 313 F.Supp. 349, 364. There is little indication the adoptive father would need any appreciable pecuniary assistance. It is more likely the natural mother would some day need help. The Court finds both parents are entitled to some damages.

Suit was also brought herein on behalf of the Estate of Reagan Edward Logue, deceased, for his pain and suffering immediately prior to his death and for funeral expenses. Plaintiffs admitted in open court that no proof had been made regarding the claim for pain and suffering. However, the estate is entitled to recover the funeral expenses.

■ It is, therefore, ordered that Orval C. Logue have judgment against the United States of America in the amount of $5,000.00, to be apportioned $3,500.00 to Alice Maire Blouin and $1,-500.00 to Orval C. Logue; and the Estate of Reagan Edward Logue, deceased, takes nothing by its suit, except that it shall recover from the United States the funeral expenses in the amount of $1,-164.50.