**Orval C. LOGUE, etc., Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 71-2426.**

United States Court of Appeals, Fifth Circuit.

May 1, 1972.

Rehearing and Rehearing En Banc Denied July 31, 1972.

Anthony J. P. Farris, U. S. Atty., William L. Bowers, Jr., Asst. U. S. Atty., Houston, Tex., for defendant-appellant.

Wm. R. Edwards, Corpus Christi, Tex., Marvin Foster, Jr., Alice, Tex.,

Philip K. Maxwell, Corpus Christi, Tex., Edwards & De Anda, Corpus Christi, Tex., for plaintiff-appellee.

Before GEWIN, AINSWORTH and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

Reagan Edward Logue (hereinafter Logue), on May 25, 1968, while confined in the Nueces County, Texas, jail pursuant to a federal bench warrant, hanged himself. Suit was brought against the United States to recover damages under the Federal Tort Claims Act, Title 28, U.S.Code, Chapter 171, and the Texas Wrongful Death Act, Vernon's Ann. Revised Civil Statutes of Texas, Article 4671, et seq. by the deceased's adoptive father, Orval C. Logue, his mother, Alice Marie Logue Blouin, and by Orval C. Logue for the estate of Reagan Edward Logue. The district court, 334 F. Supp. 322, after an evidentiary trial rendered judgment against the United States in the following amounts: $3,500.00 to the deceased's mother, $1,500.00 to Orval C. Logue and $1,164.50 to the deceased's estate for funeral expenses.

On this appeal by the United States we find no basis for holding it liable in damages for the prisoner's death. We reverse the judgment of the district court and direct entry of judgment for the appellant.

### THE FACTS

The 18 year old deceased was arrested on May 22, 1968, at Corpus Christi, Texas, by Deputy United States Marshal Bowers on a federal bench warrant issued by the Laredo Division of the Southern District of Texas charging conspiracy to smuggle 229 pounds of marijuana into the United States. Deputy Marshal Bowers placed the deceased in the Nueces County jail, Corpus Christi, as a federal prisoner. That facility was used as a contract jail by the United States under the provisions of Title 18, U.S.Code, Section 4002.[1]

About 3:00 P.M. May 23, Logue attempted suicide by cutting veins in his left arm. The wound appeared sufficiently serious for the County jailer to cause him to be taken to Memorial Hospital. There he was treated for the laceration and placed under guard in a bare room in an area of the hospital reserved for mental patients. He was seen by a psychiatrist, Dr. Shannon Gwin, and diagnosed as psychotic. There was testimony at trial that Logue also was then under the influence of an hallucinatory drug, probably LSD. Deputy Marshal Bowers sought advice from his superiors but was unable to produce a satisfactory plan to keep Logue under guard at the hospital.

On May 24, 1968, after further conferring with his superiors in the United States Marshal's Office at Laredo and at Houston and with Dr. Gwin, Deputy Marshal Bowers decided to return Logue to the Nueces County jail, despite Dr. Gwin's recommendation that the prisoner remain in the hospital until he could be transferred to another medical facility equipped to deal with his suicid-

---

1. " § 4002. Federal prisoners in state institutions; employment

For the purpose of providing suitable quarters for the safekeeping, care, and subsistence of all persons held under authority of any enactment of Congress, the Director of the Bureau of Prisons may contract, for a period not exceeding three years, with the proper authorities of any State, Territory, or political subdivision thereof, for the imprisonment, subsistence, care, and proper employment of such persons.

"Such Federal prisoners shall be employed only in the manufacture of articles for, the production of supplies for, the construction of public works for, and the maintenance and care of the institutions of, the State or political subdivision in which they are imprisoned.

"The rates to be paid for the care and custody of said persons shall take into consideration the character of the quarters furnished, sanitary conditions, and quality of subsistence and may be such as will permit and encourage the proper authorities to provide reasonably decent, sanitary, and healthful quarters and subsistence for such persons."

al tendencies. At about 3:30 P.M. that same day, Dr. Gwin, believing that he had no choice in the matter, released Logue to Bowers, who returned him to the Nueces County jail to await processing for transfer to a federal mental institution. Bowers' trial testimony was that the decision to move the prisoner back to the county jail was made by his superiors.

Deputy Marshal Bowers, aware of Logue's suicidal impulses, requested the Nueces County jail authorities to provide a cell stripped of items likely to prove injurious. In compliance with this request the prisoner was placed in a cell containing nothing except a bunk with a mattress, a toilet and a wash basin. Deputy Marshal Bowers made no arrangements for Logue's cell to be under constant surveillance. Neither did the jail employees undertake continuous surveillance of the prisoner. They did look in on him as they brought other prisoners to his jail floor.

Logue was returned to the Nueces County jail on May 24, wearing a long Kerlix bandage on his injured left arm. About 4:30 P.M., May 25, he removed the bandage and hanged himself with it from his cell bars.

## THE DECISION BELOW

The trial court found that Deputy Marshal Bowers was negligent in failing to make arrangements for constant surveillance of the deceased when he was returned to the Nueces County jail on May 24, 1968. In addition, the court below found that the employees of the jail, having actual or constructive knowledge of Logue's suicidal tendencies, were negligent in failing to place him under constant surveillance upon his return to the jail. The district court concluded that both manifestations of negligence were attributable to the United States, thereby rendering it liable in damages

for the death of Reagan Edward Logue under the Federal Tort Claims Act.

## GROUNDS ASSERTED ON APPEAL

The United States seeks reversal of the judgment below on three grounds:

(1) The district court erred in finding that the negligent acts and/or omissions of the employees of the Sheriff's Office in Nueces County in their handling of a federal prisoner were attributable to the United States.

(2) The district court erred in holding that there was a duty on the part of Deputy Marshal Bowers to provide for constant surveillance of the deceased in the jail, in that to require such surveillance was patently beyond his power or authority.

(3) The district court's finding as to the deceased's future potential and/or prospects to make a financial contribution to the individual plaintiffs is legally insufficient to support the award of damages made.

Inasmuch as we reverse the findings below as to liability, no discussion of the adequacy of the proof as to damages (ground 3 of appeal, supra) appears appropriate. It is unnecessary to reach that contention.

## LIABILITY

Relying upon the first paragraph of Title 18, U.S.C., Section 4002 (authority for the Director of the Bureau of Prisons to contract with state and local prison officials), the United States argues that the Nueces County jail was a "contractor" within the meaning of Section 2671, Title 28, United States Code.[2] From this premise, it reasons that the United States is not liable under the

---

2. Title 28, U.S.C., § 2671:

"As used in this chapter and sections 1346(b) and 2401(b) of this title, the term 'Federal agency' includes the executive departments, the military depart-

ments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States."

Federal Tort Claims Act for the negligent acts and/or omissions of the Nueces County jail's employees. Additionally, the United States contends that Deputy Marshal Bowers had no authority to require the provision of constant surveillance of the deceased while the latter was confined to the Nueces County jail.

In reply, the plaintiffs argue that Deputy Marshal Bowers was under a duty imposed by Title 18, U.S.C., Section 4042,[3] to insure the safety and well-being of the deceased and that a breach of that duty provides the basis for a recovery from the United States under the Federal Tort Claims Act. The claim is made that in the circumstances of this case such a breach would be actionable whether committed by the employees of the Nueces County jail or by Deputy Marshal Bowers.

■■■ The United States is subject to suit under the Federal Tort Claims Act for injuries suffered by federal prisoners confined in federal facilities. United States v. Muniz, 1963, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805. But we agree with the United States that *Muniz* does not extend to the situation now before us, where a federal prisoner is housed in a non-federal facility pursuant to Title 18, U.S.C., Section 4002. We interpret this section as fixing the status of the Nueces County jail as that of a "contractor". Title 28, U.S.C., Sec. 2671, footnote 2, supra. This insulates the United States from liability under the FTCA for the negligent acts or omissions of the jail's employees. We find no support in the record for holding that Deputy Marshal Bowers had any power or authority to control any of

the internal functions of the Nueces County jail. The deputy marshal, accordingly, violated no duty of safekeeping with respect to the deceased.

Close v. United States, 1968, 130 U.S. App.D.C. 125, 397 F.2d 686, relied upon by the appellees, is distinguishable from the case at bar. *Close* was a suit to recover damages under the FTCA for permanent disablement to the plaintiff caused by a fall in the District of Columbia jail allegedly due to defective shoes. The plaintiff was housed in the District jail (not under the jurisdiction of the United States) pending the disposition of his appeal from a conviction by the District of Columbia district court. The Court of Appeals in *Close* reversed the district court's dismissal of the complaint, holding that Congress did not intend to suspend the availability of the Federal Tort Claims Act to a federal prisoner incarcerated in the District of Columbia jail.

The Court of Appeals in *Close* was careful to note that the United States did not claim that the District of Columbia jail was a contractor of the Federal Government within the meaning of the contractor exception of the Federal Tort Claims Act, Title 28, U.S.C., Sec. 2671, footnote 2, supra. As noted above, such a claim is made with respect to the county jail here involved. The D. C. Circuit also observed the special relationship existing between the Federal Government and the Government of the District of Columbia:

"We note in this regard that, for purposes of the FTCA, Congress has defined 'Employee of the [federal] government' as including 'persons acting

---

3. Title 18, U.S.C., Section 4042:
   "The Bureau of Prisons, under the direction of the Attorney General, shall—
   (1) have charge of the management and regulation of all Federal penal and correctional institutions;
   (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise;

(3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States;
   (4) provide technical assistance to State and local government in the improvement of their correctional systems.
   This section shall not apply to military or naval penal or correctional institutions or the persons confined therein."

on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation.' 28 U.S.C. § 2671. The cases have, on occasion, regarded D. C. Governmental agencies as 'federal agencies' for purposes of the FTCA, depending upon the amenability of such agencies to federal control. We are not persuaded by anything appearing in this record that the Attorney General was, in a matter of this kind, wholly lacking in any capacity to assure the proper care of a prisoner for whose custody he was primarily and permanently responsible." 397 F.2d at 687.

The judgment of the district court is reversed and the cause is remanded with directions to enter judgment for the United States.