**Levon BROWN, Appellant,**

v.

**UNITED STATES of America et al., Appellees.**

**No. 72–1328.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 8, 1972.

Decided Oct. 29, 1973.

John T. Lavey, Little Rock, Ark., for appellant.

John A. Forster, Little Rock, Ark., for appellees Love and Allen.

Fletcher Jackson, Asst. U. S. Atty., Little Rock, Ark., for appellee United States.

Before MEHAFFY, Chief Judge, and BRIGHT and STEPHENSON, Circuit Judges.

MEHAFFY, Chief Judge.

This is an action for compensatory and punitive damages by a federal prisoner against the sheriff and head jailer of Pulaski County, Arkansas and against the federal government for injuries plaintiff received in two separate as-

saults by fellow inmates during plaintiff's pretrial detention in the Pulaski County Jail.[1] Recovery is sought against the sheriff and head jailer under 42 U.S.C. § 1983 and under a diversity tort claim. Recovery is sought against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq. The district court denied recovery on all of plaintiff's claims, primarily on the ground that plaintiff had failed to prove by a preponderance of the evidence that any of the defendants knew or reasonably should have known that there was any particular danger of inmate assaults upon plaintiff. Brown v. United States, 342 F.Supp. 987 (E.D. Ark.1972). Plaintiff appealed the judgment of the district court and the case was submitted for our decision in December 1972. Shortly thereafter the Supreme Court granted certiorari in a case involving similar issues, Logue v. United States, 334 F.Supp. 322 (S.D.Tex.1971), rev'd, 459 F.2d 408 (5th Cir. 1972), cert. granted, 409 U.S. 1106, 93 S.Ct. 908, 34 L.Ed.2d 685 (1973). To avoid unnecessary conflict we stayed our decision in this case pending the outcome of *Logue* in the Supreme Court. The Supreme Court's opinion in *Logue* has now been filed. 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973). After reviewing the Court's opinion in *Logue* as well as the record in this controversy, we conclude that the judgment of the district court must be affirmed except insofar as it denies recovery against the federal government for its own negligence.

The factual background of this dispute is set out in detail in the opinion of the district court and will be summarized only briefly here. In January 1969 plaintiff was committed by federal marshals to the custody of the Pulaski County Jail to await trial on federal criminal charges in the Eastern District of Arkansas. This pretrial detention of a federal prisoner in a local facility was pursuant to a contract between the Federal Bureau of Prisons and Pulaski County under the authority of 18 U.S.C. § 4002 and Ark.Stat.Ann. § 46–409. During his pretrial incarceration plaintiff was assaulted twice by fellow prisoners. Plaintiff claims that these assaults gave rise to four separate causes of action:

1) a diversity claim under Arkansas tort law against the sheriff and head jailer for negligence;

2) a civil rights claim under 42 U.S.C. § 1983 against the sheriff and head jailer by analogy to the tort claim;

3) a Federal Tort Claims Act action against the federal government on the theory that the United States is vicariously liable for the acts or omissions of the sheriff and head jailer; and

4) a Federal Tort Claims Act claim against the United States for its own negligence in entering into the contract and/or placing plaintiff in an inadequate facility.

Two of these causes of action can be dispensed with summarily. First, the district court held that the diversity claim against the sheriff and head jailer was barred by the applicable Arkansas statute of limitations, Ark. Stat.Ann. § 37–203. We agree, and we affirm this holding on the basis of the district court's opinion.[2] Second, plain-

---

1. Plaintiff also seeks recovery for the injuries he allegedly received when he was exposed to tear gas. The district court found that the use of tear gas was reasonable and justified. We summarily affirm the judgment below regarding this point on the basis of the district court's opinion.

2. The individual defendants have also raised a statute of limitations defense with respect to the § 1983 claim against them. The district court expressly avoided this issue. 342 F.Supp. at 995. In light of the apparent confusion in our recent decisions regarding the statute of limitations defense in § 1983 actions, *compare* Glasscoe v. Howell, 431 F. 2d 863 (8th Cir. 1970) *with* Johnson v. Dailey, 479 F.2d 86 (8th Cir. 1973), we follow the district court's lead. Our brief discussion of the state statute of limitations is-

tiff's claim under the Federal Tort Claims Act on the basis of vicarious liability is clearly foreclosed by the Supreme Court's holding in Logue v. United States, *supra,* that the United States is not liable under the FTCA for the negligence of its independent contractors. Plaintiff's remaining causes of action require somewhat closer scrutiny.

### 1983

Section 1983 provides a civil remedy for any person who is deprived of a federally secured right by an individual acting under color of state law. Although the statute was enacted during Reconstruction its widespread use is an occurrence of relatively recent vintage. A major factor in the modern development of § 1983 was the Supreme Court's holding in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), that "[s]ection [1983] should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." *Id.* at 187, 81 S.Ct. at 484. In the case before us today plaintiff would have us read § 1983 against the background of tort liability that makes a jailer liable for his negligent failure to protect a prisoner from assaults by other prisoners.

We recognize, of course, that most jurisdictions do impose tort liability upon jailers who negligently fail to protect their prisoners adequately. *E. g.,* Annot. 41 A.L.R.3d 1021 (1972); Restatement (Second) Torts, § 320. This duty to exercise reasonable care stems not only from the fact that a prisoner is deprived of most of his means of self-defense but also from the fact that he is involuntarily exposed to association with individuals who may be peculiarly prone to physically assaultive conduct. We are not at all certain, however, that § 1983 incorporates *en toto* this particular theory of tort liability. Even if we assume that freedom from reasonably preventible inmate assaults is a federally secured right, we are extremely hesitant to hold that mere simple negligence can be the basis of personal liability under § 1983. *See* Pierson v. Ray, 386 U.S. 547, 87 S. Ct. 1213, 18 L.Ed.2d 288 (1967).

Having stated our misgivings about plaintiff's theory under § 1983, we find it unnecessary to decide his claim on this point. Even if we assume that mere simple negligence on the part of the sheriff and head jailer is actionable under § 1983, we must agree with the district court that plaintiff failed to prove the essential elements of his case.

■ The gist of plaintiff's proof in the district court was that the Pulaski County Jail was woefully understaffed and overcrowded. Certainly the conditions of that institution are no stranger to this court, *see* Hamilton v. Love, 328 F.Supp. 1182 (E.D.Ark.1971), and it would be facile to suggest that those inadequacies had no causal connection with the inmate assaults plaintiff suffered.[3] The inadequacies of the Pulaski County Jail shown by the plaintiff, however, were not attributable to any personal act or omission of the sheriff or head jailer. Both men were under a statutory as well as a contractual duty to accept all prisoners offered for custody. Given the limited means and facility they had at their disposal it appears that both the sheriff and the head jailer exercised all care one could reasonably expect of them in providing for the pro-

---

sue is not intended in any way to express any opinion on our part regarding the limitations defense to § 1983.

3. The district court's findings of fact made it clear that the overcrowding and understaffing had made it virtually impossible to protect detainees from inmate assaults:

"To put the matter bluntly, the prisoners on the second floor [where plaintiff was housed] were simply left to their own devices, and there were no effective means of communication between the second and first floors [where the so-called free-world staff was stationed] whereby assistance could readily be summoned above." 342 F.Supp. at 996.

tection of their prisoners.[4] As has already been noted elsewhere, the exercise of reasonable care in the administration of an admittedly inadequate facility is no defense to a § 1983 action for injunctive relief against the appropriate officials in their official capacities. Hamilton v. Love, *supra,* at 1194. But to render these officials personally liable in damages we feel some personal fault on the part of the individuals must be demonstrated. Plaintiff presented no substantial evidence to show that the individual defendants failed to exercise reasonable care in their personal capacities in providing for plaintiff's safekeeping. In the absence of such a showing there can be no recovery, even under plaintiff's theory of negligence, against the sheriff and head jailer personally.

### The Federal Tort Claims Act

██ Plaintiff's cause of action against the United States for its own negligence presents a more difficult question than that presented by his § 1983 claim. Two key factors distinguish the position of the federal government from the position of the sheriff and head jailer. First, unlike § 1983, it is clear that the Federal Tort Claims Act does render the United States answerable in damages for the simple negligence of its employees in failing to protect federal prisoners. United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). Secondly, unlike the sheriff and head jailer, the United States was under no obligation to place the plaintiff in the Pulaski County Jail during his pretrial detention.

██ The gist of plaintiff's claim against the United States is that the government negligently breached its duty to exercise reasonable care in pro-

viding for plaintiff's safety by placing him in a facility that it knew or reasonably should have known was so inadequate that he could not be adequately protected from the foreseeable risk of assaults by fellow prisoners. The district court accepted plaintiff's theory of liability but denied recovery on the ground that plaintiff had failed to prove that the federal government knew or reasonably should have known of the conditions in the Pulaski County Jail. We disagree with this finding of fact and reverse it as clearly erroneous.

The record clearly reflects that the inadequacies of the jail were not a sudden development. The record also reflects that the inadequacies of the institution, especially the understaffing and overcrowding had been a long-standing source of criticism from the Pulaski County grand juries. The record also reflects that inspectors from the Federal Bureau of Prisons regularly inspected the facilities. Defendant Allen, the head jailer, personally testified that he complained about the understaffing and overcrowding not only to the federal inspectors but also to the United States marshals and "to everybody we know about . . . , and so has the sheriff." Transcript at 43–4, 47. Furthermore, a member of the United States marshal's staff in the Eastern District of Arkansas grudgingly conceded that he knew of the local grand jury criticism and of the basis of that criticism:

"A. [Marshal Powell] The facilities at that jail are bad.

"Q. [by plaintiff's counsel] And you knew that?

"A. I knew that.

"Q. And also, didn't you know it was overpopulated?

"A. I knew that.

---

4. To the extent that the sheriff and jailer may have had a duty to do something more than administer an inadequate facility as best they could, we find that they discharged that duty. The record reflects that both the sheriff and head jailer complained repeatedly about the inadequacies and made good faith affirmative efforts to secure the means necessary to relieve the crowded and understaffed conditions.

"Q. You knew that it was understaffed?

"A. I knew that."

Transcript at 162.

In the face of this record it is impossible to escape the conclusion that the federal government knew or reasonably should have known of the inadequate conditions in the Pulaski County Jail. We must therefore reverse the judgment of the district court insofar as it denied recovery for the federal government's own negligence.

On remand it will be necessary for the district court to consider and decide one or more of three separate questions. First, as the district court properly noted, plaintiff's cause of action under the Federal Tort Claims Act is confronted by a very serious obstacle in the form of the discretionary function exception, 28 U.S.C. § 2680(a). *See* 342 F.Supp. at 996. Secondly, there is at least some doubt about whether or not the negligence of the federal government was so remote from the incidents in which plaintiff was injured as to destroy any proximately causal connection. Third, assuming the district court decides in plaintiff's favor on the above two issues, the court will have to compute what damages, nominal or actual,[5] plaintiff is entitled to receive. Our comments outlining the questions on remand, of course, are merely suggestive and should not be construed as indicating any attitude on the part of this court regarding the proper resolution of the issues.

The judgment of the district court is affirmed insofar as it denies recovery against the sheriff and the head jailer, either individually or in their official capacities. The judgment of the district court is also affirmed insofar as it denies recovery against the United States on the theory of imputed negligence. The judgment of the district court is reversed insofar as it denies recovery

against the United States for its own negligence, and the cause is remanded for further proceedings consistent with this opinion.

---

5. Punitive damages are not available under the FTCA. 28 U.S.C. § 2674; Hatahley v.

United States, 351 U.S. 173, 182, 76 S.Ct. 745, 100 L.Ed. 1065 (1956).