**Orval C. LOGUE, etc., Plaintiff-Appellee,**

**v.**

**UNITED STATES of America, Defendant-Appellant.**

**No. 71-2426.**

United States Court of Appeals,
. Fifth Circuit.

July 31, 1972.

Anthony J. P. Farris, U. S. Atty., William L. Bowers, Jr., Asst. U. S. Atty., Houston, Tex., for defendant-appellant.

Wm. R. Edwards, Corpus Christi, Tex., Marvin Foster, Alice, Tex., Philip K.

---

Maxwell, Corpus Christi, Tex., for plaintiff-appellee.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

(Opinion May 1, 1972, 5 Cir., 1972, 459 F.2d 408).

Before GEWIN, AINSWORTH and SIMPSON, Circuit Judges.

### PER CURIAM:

The Petition for Rehearing is denied and the Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is also denied.

Before JOHN R. BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, INGRAHAM and RONEY, Circuit Judges.

JOHN R. BROWN, Chief Judge, with whom WISDOM and GOLDBERG, Circuit Judges, join, dissenting from the denial of rehearing en banc:

If a Deputy United States Marshal, after discovering a tubercular prisoner's critical physical condition, nevertheless decided to consign that individual to the custody of State authorities in a county jail without first determining whether the facilities provided adequate treatment for tuberculosis victims, and without even attempting to find out whether the conditions of confinement reasonably assured continued survival, I have difficulty believing that the Government's liability under the Federal Tort Claims Act for death resulting from lack of proper medical attention or from an unsanitary environment could be avoided with the bland assertion that the Marshal had no authority to convert the jail into a hospital. Since the facts of the present case are not materially different, I suggest that this serious and previously unresolved problem involving the care of Federal prisoners temporarily confined under contract with State officials is of sufficient importance to merit en banc reconsideration by the Court.

No one disputes that the Marshal was explicitly charged by law with an affirmative duty to provide for the safekeeping, care and protection of persons in his custody accused of Federal offenses, 18 U.S.C.A. § 4042. No one suggests that the Marshal was not given more than fair warning of his prisoner's unmistakably suicidal tendencies as a result of his initially unsuccessful but obviously serious attempt to take his own life. No one asserts that the Marshal made any reasonably diligent effort to assure proper supervision of the prisoner while he was confined alone in his cell or that the same tragic result would have transpired if Logue had remained in a hospital equipped to provide the necessary surveillance. The only justification advanced for overturning the District Court's finding of negligence on the part of the Marshal is the conclusion that the record provides no basis for holding that he "had any power or authority to control any of the internal functions of the Nueces County jail."

Without initiating an extensive discourse on the state of the evidence—which seems to offer at least some tangible support for the theory that the Sheriff and his deputies were subject to the Marshal's control because they frequently complied with his informal instructions or suggestions [1]—I need only point out that the question of the Marshal's authority to effect changes in the conditions of confinement is actually irrelevant here. The breach of the statutory duty of care occurred when Logue was confined under circumstances which

---

1. The panel's opinion supports this position by stating that the Nueces County authorities complied with the Marshal's request that Logue be placed in a cell stripped of all items likely to prove injurious.

the Marshal knew were inherently dangerous in the absence of special precautions, regardless of what he may or may not have been empowered to do about the situation. Once the Government undertakes performance of an act entailing a duty of ordinary care it may not thereafter avoid liability under the Federal Tort Claims Act simply by abandoning the undertaking and attempting to attribute the responsibility to someone else. Indian Towing Company v. United States, 1955, 350 U.S. 61, 69, 76 S.Ct. 122, 126, 100 L.Ed. 48, 56; United States v. Gavagan, 5 Cir., 1960, 280 F.2d 319, cert. denied, 1961, 364 U.S. 933, 81 S.Ct. 379, 5 L.Ed.2d 365.

Rather than providing for Logue's safety, the Marshal simply abandoned him, thus breaching the duty of care which, "in the case of a mental patient, * * * must be reasonably adapted and proportioned to his known suicidal, homicidal, or other like destructive tendencies." United States v. Gray, 10 Cir., 1952, 199 F.2d 239, 242. In this respect the present case is equivalent to Underwood v. United States, 5 Cir., 1966, 356 F.2d 92, in which liability under the Act resulted from the Air Force's negligence in permitting a mentally deranged Airman to return to unrestricted duty and to draw from the armory a pistol he subsequently used to kill his wife. There was no suggestion that liability was contingent upon the exercise of "authority" or "control" by the Government at the time of the shooting, since liability arose only from the initial failure to utilize ordinary care. The same is true here—the Marshal's purported inability to arrange for the continuous observation of the prisoner does not excuse the earlier breach of the duty to provide a reasonably safe place of confinement.[2]

The Court also reasons that the negligence of the State authorities in failing to keep Logue under constant scrutiny cannot be attributed to the United States because the Nueces County jail was a "contractor" within the meaning of 28 U.S.C.A. § 2671. Of course I do not dispute the axiomatic proposition that ordinarily such a "contractor" is not an "employee" for whose negligence the Government is liable under the Act. Emelwon, Inc. v. United States, 5 Cir., 1968, 391 F.2d 9, cert. denied sub nom. Florida v. Emelwon, Inc., 393 U.S. 841, 89 S.Ct. 119, 21 L.Ed.2d 111. However, here the plaintiffs rely primarily upon that portion of the Act defining "employees" as "* * * persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation." 28 U.S.C.A. § 2671. Since under the contract arrangement State authorities perform all functions incidental to the confinement of Federal prisoners that would otherwise be performed by the United States Marshal, the theory is that the Marshal's office is a "federal agency" on behalf of which State jailers act "in an official capacity, temporarily * * * in the service of the United States." In effect, the Nueces County Sheriff and his deputies become surrogate Marshals for purposes of Federal tort liability.

While passing no final judgment at this stage, I do point out that this argument was barely mentioned in the panel's opinion, much less refuted by it. The Government contends that a Marshal has no authority to appoint a State law enforcement officer to act on behalf of or in the service of the United States, yet under the literal wording of the statute the absence of such authority would appear to be irrelevant. Moreover, when the Government decides that a particular individual should assume obligations and responsibilities virtually identical to those of a salaried Federal

---

2. The Government attempts to distinguish *Underwood* by implying that here its statutory responsibilities were somehow "delegated to the Sheriff and his deputies. Neither the statutes nor the case law sanctions such a "delegation." Indian Towing Company v. United States, *supra;* United States v. Gavagan, *supra.*

employee, there may very well be some persuasive basis for the suggestion that such an individual's breach of a specific statutory duty owed by the salaried employee to a specific class of persons should visit identical liability upon the United States. Obviously there is more than a subtle distinction between a "contractor" who breaches a duty of reasonable care owed to the world at large and a "contractor" who performs specific custodial functions that under a plain Congressional mandate would ordinarily entail a definite obligation of due care owed to a discrete (and particularly vulnerable) class of people. If only for the sake of uniformity and the avoidance of formalistic legal distinctions totally divorced from the realities of the situation, further consideration of the problem might inevitably lead to the conclusion that the Sheriff and his deputies were "employees" within the meaning of the Act, particularly in light of the principle that "the Government's liability is no longer restricted to circumstances in which government bodies have traditionally been responsible for misconduct of their employees. The Act extends to novel and unprecedented forms of liability as well." United States v. Muniz, 1963, 374 U.S. 150, 159, 83 S.Ct. 1850, 1856, 10 L.Ed.2d 805, 813. As has long been recognized, "the Federal Tort Claims Act waives the Government's immunity from suit in sweeping language." United States v. Yellow Cab Company, 1951, 340 U.S. 543, 547, 71 S.Ct. 399, 402, 95 L.Ed. 523, 528.

Apart from the difficulties posed by this case in isolation, its implications within the broader context of modern-day prison administration are even more disturbing. Overcrowding and substandard physical facilities inevitably have a progressively detrimental impact on the administrator's ability to insure the health, safety and welfare of those in his custody. Increasingly we are being forced to confront undeniable evidence that the inmates of many institutions routinely subject other prisoners to varieties of subhuman treatment that no citizen of a civilized nation, whatever his transgression against society, should be compelled to endure. That such outrages are inflicted upon those serving sentences following conviction is disgraceful. But when the victim charged with a Federal offense is merely confined temporarily in a State jail while awaiting transfer or release on bond, I hardly think we provide an acceptable answer when we tell him or his family that restitution for death or injury resulting from his custodian's culpable neglect is unavailable because the responsible official was wearing a State rather than a Federal badge. In such circumstances I cannot concede that despite the constable's blunder the Government must go free.

I dissent from the denial of rehearing en banc.