**Levon BROWN, Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

**No. LR–71–C–78.**

United States District Court,
E. D. Arkansas, W. D.
April 18, 1974.

724

John T. Lavey, Little Rock, Ark., for plaintiff.

W. H. Dillahunty, U. S. Atty., E. D. Ark., and Fletcher Jackson, Asst. U. S. Atty., E. D. Ark., Little Rock, Ark., for defendant.

## MEMORANDUM AND JUDGMENT

HENLEY, Chief Judge.

As this case now stands, it is an action for damages brought against the Government by the plaintiff, Levon Brown, under the provisions of the Federal Tort Claims Act, 28 U.S.C.A., section 2671 et seq. Jurisdiction is predicated on 28 U.S.C.A., section 1346(b).

The suit arises from the fact that in January 1969 and again in mid-March of that year Brown, while confined as a federal prisoner in the Pulaski County Jail in Little Rock, Arkansas, was physically assaulted and injured to some extent by other inmates of the common cell in which he and they were confined.

At the time of the commencement of the action Brown was an inmate of the Federal Correctional Institution at Sandstone, Minnesota, pursuant to a judgment and sentence of this Court entered and imposed by the late District Judge Gordon E. Young. Plaintiff was permitted to prosecute the action in forma pauperis, and counsel was appointed to represent him.

The original action was brought against the Government and against Monroe Love, Sheriff of Pulaski County, and O. A. Allen, Head Jailer of the County, who is a subordinate of Love. The claim of plaintiff was that the assaults committed upon him and the injuries resulting therefrom were proximately caused by negligence on the part of the Government and on the part of the individual defendants in confining him in an unsafe, overcrowded, and understaffed jail with no adequate provision being made to protect him from assaults at the hands of other inmates.

The claim against the original defendants was predicated upon the common law of Arkansas, there being diversity of citizenship between Brown and the individual defendants and the requisite amount in controversy. The claim was also based upon 42 U.S.C.A., section 1983, it being contended by plaintiff that his confinement amounted to a deprivation of rights secured to him by the Constitution of the United States. As to the Government Brown contended that Government officers or employees were guilty of negligence in connection

with his confinement in the Jail, and he also contended that the Government was liable for the alleged negligence and culpable misconduct of the individual defendants.

All of the defendants answered and denied liability. The Government denied that it was guilty of negligence that was a proximate cause of Brown's injuries, and denied that it was responsible for the acts of the individual defendants. The Government also invoked the discretionary function exception appearing in the Tort Claims Act, 28 U.S.C.A., section 2680(a).[1] The individual defendants denied that they were guilty of any negligence or had deprived plaintiff of any of his civil rights; they also contended that the action against them was barred by limitations.

The case was tried to the Court without a jury, and on May 10, 1972, the Court filed an opinion and entered a judgment dismissing the complaint as to all of the defendants. Brown v. United States, E.D.Ark., 1972, 342 F.Supp. 987. The Court held that the common law claim against the individual defendants was barred by limitations, and the Court rejected the claim against those defendants based on 42 U.S.C.A., section 1983. The Court concluded that the Government was not liable for the negligence, if any, of the individual defendants, and that a preponderance of the evidence did not show that any federal agents or employees concerned with plaintiff's confinement in the Jail had been guilty of negligence.

The ultimate view that the Court took of the case rendered it unnecessary for the Court to pass upon any questions of proximate causation or to rule upon the Government's contention based on section 2680(a). However, the Court did comment briefly on the discretionary function exception appearing in the Act and stated that in view of certain facts mentioned in the opinion it was arguable that the exception was applicable to the case. 342 F.Supp. at 996. The Court made no dollars and cents finding as to damages but did point out that the injuries sustained by Brown were very minor, and that even if liability existed, any award in Brown's favor would be minimal and might even be considered nominal. 342 F.Supp. at 991.

Although the Court dismissed the complaint in its entirety, the Court found that during the period of Brown's incarceration in the Jail conditions prevailing there were extremely bad, that the Jail was overcrowded and understaffed, and that no effective safeguards were taken for the protection of inmates. The Court also took cognizance of the fact that in 1971 District Judge Eisele had found conditions in the Jail to be so bad as to make the confinement of prisoners there unconstitutional.[2]

Plaintiff appealed from the judgment of the Court, and the case was duly briefed and argued in the Court of Appeals. That Court deferred ruling until the Supreme Court of the United States should decide the then pending case of Logue v. United States which involved primarily the question of vicarious liability of the Government for negligence of local jail officials resulting in the injury or death of federal prisoners confined in the jail. That case was decided on June 11, 1973, 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121, and the Court of Appeals decided this case on October 28, 1973. Brown v. United States, 8 Cir., 1973, 486 F.2d 284.

---

1. § 2680. EXCEPTIONS

The provisions of this chapter and section 1346(b) of this title shall not apply to—

(a) Any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

2. See Hamilton v. Love, Sheriff, E.D.Ark., 1971, 328 F.Supp. 1182. It is noted that after that decision was handed down, Judge Eisele had a great deal of difficulty in compelling the Sheriff and others concerned to bring the Jail up to constitutionally tolerable standards; however, constitutional tolerability was eventually achieved.

To the extent that this Court had dismissed the complaint as against the individual defendants its judgment was affirmed. And on the authority of *Logue,* supra, the Court of Appeals approved the holding of this Court that the Government was not responsible for any tortious acts of Sheriff Love and Head Jailer Allen or their subordinates.[3]

However, the Court of Appeals concluded that the finding of this Court that the evidence did not establish negligence on the part of the Government was clearly erroneous. The dismissal of the complaint as to the Government was reversed, and the case was remanded with directions to the Court to consider the issues of proximate cause and discretionary function, and, if necessary, to make a finding as to damages.

Those issues have now been submitted on the record made at the original trial, and the Court will undertake to deal with them.[4] In that connection the

Court has considered letter briefs submitted by counsel.

While the facts of the case are stated in considerable detail in the Court's original opinion, a restatement of the facts bearing most significantly upon the particular issues now before the Court will be helpful. Those facts must be considered in the light of 18 U.S.C. A., sections 4002 and 4042.

■ Section 4002 relates to the confinement and employment of federal prisoners in State institutions. That section authorizes the Federal Bureau of Prisons, an agency in the United States Department of Justice, to contract for periods of not more than three years with the authorities of any State, Territory, or political subdivision thereof "for the imprisonment, subsistence, care, and proper employment" of federal prisoners in State, Territorial, or local prisons or jails. While local authorities contracting with the Bureau for the custody and

3. The Court is going to have occasion to mention later on and in another context the Logue litigation which is still not at an end, and the Court deems it well to describe that litigation at this point. The suit arose out of the suicide of a federal prisoner who was being held in the Nueces County Jail in Corpus Christi, Texas; Nueces County had a contract with the Bureau of Prisons for the custody of federal prisoners similar to the contract between the Bureau and Pulaski County. The decedent, Logue, first attempted to kill himself in the jail by cutting one of his arms; he was carried to a local hospital and treated; he was later returned to the jail; while he was placed in a "stripped cell," he was not kept under constant surveillance; he was able to remove the bandage from his injured arm and hang himself with the bandage. His personal representative brought suit against the Government under the Tort Claims Act alleging negligence on the part of personnel in the office of the United States Marshal and negligence on the part of a Deputy Marshal and on the theory that the local officials were also negligent, and that the Government was liable for their negligence. In dealing with a claim of "discretionary function" the District Court held that the transfer of the prisoner from the hospital back to the jail was such a function, but that leaving him in the jail without constant supervision was not a discretionary function. Logue v. United States,

S.D.Tex., 1971, 334 F.Supp. 322. The Court of Appeals reversed, it being held that the Government was not responsible for the negligence of the local officials, and that the Deputy Marshal involved had not been guilty of negligence since he had no right to control the operation of the jail. Logue v. United States, 5 Cir., 1972, 459 F.2d 408. A motion for rehearing en banc was denied with three judges dissenting; their views were expressed in a dissenting opinion written by Chief Judge Brown. Logue v. United States, 5 Cir., 1972, 463 F.2d 1340. The Supreme Court affirmed the Court of Appeals in its holding that the Government was not liable for the negligence of the local officials, but remanded the case to the Court of Appeals for further consideration of the question of negligence on the part of the Deputy Marshal. Logue v. United States, 1973, 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed. 2d 121. The Court of Appeals in turn remanded the case to the District Court for more explicit findings. Logue v. United States, 5 Cir., 1974, 488 F.2d 1090. This Court has been advised by the Clerk of the Court of Appeals for the Fifth Circuit that the case is still pending in the District Court.

4. Neither side has suggested any need for a further evidentiary hearing, and it appears to the Court that no such hearing is necessary.

care of federal prisons are supposed to comply with the rules and regulations of the Bureau, neither the Bureau nor any other federal agency or officer thereof has any authority to exercise any control over the day to day management of the local institution or over the details of the custody and care of federal prisoners confined therein. Logue v. United States, supra.

Section 4042 provides, among other things, that the Bureau of Prisons under the direction of the Attorney General shall:

"(2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise;

"(3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States; . . . ."

Both section 4002 and section 4042 are derived from the Act of May 14, 1930, c. 274, 46 Stat. 325, which created the Bureau of Prisons and prescribed its functions.

The record in this case discloses that in 1968 the Bureau of Prisons acting under the authority of section 4002 entered into a contract with the Pulaski County for the confinement of federal prisoners in the Pulaski County Jail. That contract was in force during the period of Brown's incarceration in the Jail.

In late 1968 Brown and one Clincy were accused of federal crime in the Eastern District of Arkansas and were apprehended in Omaha, Nebraska. They were transported to Little Rock by Deputy United States Marshals from Omaha. The party arrived in Little Rock on the evening of Saturday, January 4, 1969, and the prisoners were routinely turned over to the jailer on duty and were confined in a "bull pen" type cell already occupied by a number of local inmates. There is no evidence that the Deputy Marshals from Nebraska had any knowledge of any deficiencies existing with respect to the Jail.

Within a very short time after their initial incarceration Brown and Clincy were assaulted and beaten to some extent by their cell mates in the course of what is commonly called a "kangaroo court" episode. The injuries received by the two men did not require any medical treatment and plaintiff and his companion did not make any complaint about the incident.

Brown and Clincy remained in the same cell where they had been placed originally until March 19 when they were again assaulted by fellow inmates. On this occasion Brown received a visible injury. The episode was brought to the attention of the United States Marshal for the Eastern District of Arkansas or one of his deputies, and Brown was provided with the slight medication that was required for the treatment of his injury. Thereafter he and Clincy were transferred to another cell where they remained without incident until removed from Arkansas following the imposition of sentence upon them by Judge Young.

The situation of Brown and his companion while confined in the Jail was anomalous to say the least. While they were federal prisoners and entitled to be safely confined, it has been seen that the federal authorities concerned with their confinement had no right to control the operation and management of the Jail and made no effort to exercise such control. This Court so recognized in its original opinion. 342 F.Supp. at 998. However, the local Marshal was not required to keep federal prisoners in the Jail; he could have removed them to some other facility as was eventually done when Pulaski County cancelled its contract with the Bureau of Prisons in late 1973.

I.

The issue of proximate cause which is before the Court causes no difficulty. The holding of the Court of

Appeals establishes as the law of the case that the Government breached its duty to use reasonable care in providing for plaintiff's safety by confining him "in a facility that it knew or reasonably should have known was so inadequate that he could not be adequately protected from the foreseeable risk of assaults by fellow prisoners." (486 F.2d at 288.) To put it slightly differently, the Court of Appeals found that the Government was guilty of negligence in exposing plaintiff to an unreasonable risk of harm at the hands of fellow inmates.

While the two assaults on plaintiff were substantially separated in point of time, and while the second assault took place more than two months after plaintiff's original incarceration, both assaults resulted from the same risk to which plaintiff was negligently exposed in the first place. The first assault was in no sense remote in time from the original incarceration, and there is no evidence that between the first and second assaults anything occurred that would break the chain of causation running back from the second assault to the original negligence.

The Court finds, therefore, that both assaults were proximately caused by negligence on the part of the Government.

## II.

That finding squarely confronts the Court with the discretionary function claim of the Government.

Section 2680(a) of Title 28, U.S.C.A., heretofore copied in the margin, presupposes conduct by an officer or employee of the Government which would impose tort liability if engaged in by a private individual or corporation, but immunizes the Government from such liability if the conduct amounts to the exercise or failure to exercise a "discretionary function or duty." And in United States v.

Muniz, 1963, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805, the Supreme Court recognized that in proper cases the discretionary function exception is available to the Government when sued under the Tort Claims Act by federal convicts or prisoners on account of injuries received by them while incarcerated by the Government.

Section 2680(a) does not define the term "discretionary function or duty," and there is no question that the federal courts have encountered problems in attempting to construe and apply the statutory exception in particular cases or in connection with particular governmental functions. The problems have arisen because the courts have not been willing to characterize as "discretionary" functions all governmental functions the exercise of which calls for the use of "discretion" or judgment.

█ The Court finds it unnecessary to engage in any detailed discussion of the concept of "discretionary function." As far as this case is concerned it is sufficient to say that if a duty of care with respect to an individual or class of individuals is imposed on the Government by law or is voluntarily assumed by the Government, then the duty so imposed or assumed must be discharged in a nonnegligent manner, and where the Government is guilty of negligence it cannot escape liability by invoking section 2680(a). See Rayonier v. United States, 1957, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354; Indian Towing Co. v. United States, 1955, 350 U.S. 61, 76 S. Ct. 122, 100 L.Ed. 48; Somerset Seafood Co. v. United States, 4 Cir., 1951, 193 F.2d 631; Cohen v. United States, N.D. Ga., 1966, 252 F.Supp. 679.[5]

█ It may be assumed that 18 U.S. C.A., section 4002, confers upon the Bureau of Prisons discretion to contract with a particular local political subdivision for the confinement of federal prisoners in a local jail. But in the Court's

---

5. *Rayonier* and *Indian Towing* may have narrowed the construction placed on the exception in Dalehite v. United States, 1953, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427.

opinion section 4002 must be read in conjunction with and in subordination to section 4042 which imposes upon the Bureau a positive duty to use care for the safety of all federal prisoners and convicts regardless of whether they are confined in federal institutions or whether they are confined in State or local jails or penal institutions.

It thus appears to the Court that the Government, acting through the Bureau of Prisons, is required to use ordinary care in choosing its contractors and in determining whether federal prisoners should be kept in a particular facility, and that the governmental functions performed in those areas are not "discretionary functions" with respect to which the Government is immune from tort liability by virtue of section 2680(a).

■ Specifically, the Government is not to be permitted negligently to contract for the confinement of federal prisoners in a substandard, dangerous, and perhaps unconstitutional jail, and leave them there at the mercy of their fellow inmates, and then claim "discretionary function" when sued by a prisoner or former prisoner on account of injuries resulting from the risk to which he was negligently exposed.

■ In coming to this conclusion the Court is fully aware of the fact, already mentioned, that the Government had no authority to control the operation and management of the Jail or to cause the conditions of confinement therein to be improved. But the Court agrees with Chief Judge Brown of the Fifth Circuit that that consideration is irrelevant. In his opinion dissenting from the refusal of the Court of Appeals to grant a rehearing en banc in the Logue case, in which opinion he was joined by Judges Wisdom and Goldberg, Judge Brown said:

". . . I need only point out that the question of the Marshal's authority to effect changes in the conditions of confinement is actually irrelevant here. The breach of the statutory duty of care occurred when Logue was confined under circumstances which the Marshal knew were inherently dangerous in the absence of special precautions, regardless of what he may or may not have been empowered to do about the situation. Once the Government undertakes performance of an act entailing a duty of ordinary care it may not thereafter avoid liability under the Federal Tort Claims Act simply by abandoning the undertaking and attempting to attribute the responsibility to someone else . . . ." Logue v. United States, 5 Cir., 1972, 463 F.2d 1340, 1341–1342.

### III.

■ The question of damages remains to be considered; it may be disposed of briefly. The Court in its original opinion described Brown's injuries in some detail and will not repeat that description here. The Government is not liable for punitive damages, and the Court finds that $500 is fair and reasonable compensation for the injuries that plaintiff received while in the Jail.

The Court finds that counsel for plaintiff should be allowed a fee of $125.00 as provided by 28 U.S.C.A., section 2678, as amended. The fee should be paid out of the award, and any check drawn by the Government in satisfaction of the judgment should be made payable to plaintiff and his attorney jointly.

Accordingly, it is ordered, adjudged, and decreed that the plaintiff, Levon Brown, have and recover of the defendant, United States of America, the sum of $500.