Dale Paul CRUIKSHANK, Plaintiff,

v.

The UNITED STATES of America,
Defendant.

Civ. No. 76–0362.

United States District Court,
D. Hawaii.

May 9, 1977.

David L. Turk, Turk & Kuniyuki, Honolulu, Hawaii, Melvin Wolf, American Civil Liberties Union, New York City, for plaintiff.

T. David Woo, Jr., Asst. U. S. Atty., Harold M. Fong, U. S. Atty., Honolulu, Hawaii, Barbara Allen Babcock, Asst. Atty. Gen., Alphonse M. Alfano, Dept. of Justice, Washington, D. C., for defendant.

---

1. Oral argument of this motion was heard by Thomas P. Young, the United States Magistrate for the District of Hawaii. Pursuant to Rule 5 of the District of Hawaii Local Magistrate Rules, Judge Young recommended that the motion be denied and suggested a written opinion. After receiving and considering the objections of the parties to Judge Young's recommendations, I will substitute this decision for the opinion suggested by Judge Young and the government's motion will be denied. This deci-

## DECISION

SAMUEL P. KING, Chief Judge.

### I. STATEMENT OF THE CASE[1]

On nineteen separate occasions between 1968 and 1971, agents of the Central Intelligence Agency (CIA) opened and photographed sealed, first class letters mailed by plaintiff to colleagues in the Soviet Union. The opening of plaintiff's mail was done as part of Operation HTLINGUAL,[2] a program of covert mail opening conducted by the CIA in New York from 1953 until 1973. Plaintiff alleges that the opening of his mail was conducted without a warrant, was illegal,[3] and was done by employees of the United States acting within the scope of their employment.

Invoking the provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 (1970), plaintiff brought suit against the United States in this Court seeking damages for intentional invasion of his privacy.[4] The Government has moved for dismissal of the complaint on the grounds that the Court lacks subject matter jurisdiction and that the complaint fails to state a claim upon which relief can be granted. For a number of reasons, the United States argues that it has not waived its sovereign immunity from suit in the case of massive illegal conduct by its employees. This Court disagrees with all four of the arguments advanced by the Government to sustain this premise.

### II. DISCUSSION

#### A. THE SCOPE OF SECTION 1346(b)

The Government's first argument is that 28 U.S.C. § 1346(b), the general waiver of

sion is in large part based upon the opinion originally prepared by Judge Young.

2. An overview of the HTLINGUAL program can be found in the Commission on CIA Activities Within the United States, Report to the President 101–115 (1975).

3. See, e. g., 18 U.S.C. § 1702 (1970).

4. Plaintiff chose not to join the individual agents who actually opened his mail.

sovereign immunity, does not extend far enough to cover the activities of which the plaintiff complains. Section 1346(b) reads as follows:

> Subject to the provisions of chapter 171 of this title, the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

The thrust of the Government's argument is that because the covert mail opening program was illegal,[5] the CIA agents involved could not have been legally authorized to carry out these activities. Consequently, as a matter of law, the agents were not "acting within the scope of [their] office or employment", as that phrase is used in Section 1346(b), and, thus, the complaint must be dismissed.

One's immediate response to this argument is that it misconceives the obvious purpose of the phrase in Section 1346(b). The dichotomy between an act within and without the scope of an officer's employment was set up to prevent the United States from being liable for acts committed by its employees when they were not on duty; not to prevent liability for acts, albeit illegal ones, directly committed as a part of the employee's job. *See generally*

*United States v. Romitti,* 363 F.2d 662 (9th Cir. 1966). Obviously, the agents who opened plaintiff's mail were not doing so on their own time; they were paid by the United States for that purpose.

In order to sustain its argument, the Government relies heavily on *Hatahley v. United States,* 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065 (1956). However, such reliance is misplaced. If anything, the holding in *Hatahley* supports the plaintiff's position here. In *Hatahley,* agents of the Interior Department rounded up and destroyed horses which belonged to a group of Indians. At the time, the agents were purportedly acting pursuant to a state abandoned horse statute but they failed to give the Indians notice of their intended actions, as required by federal law. 351 U.S. 177–80, 76 S.Ct. 745. Thus, the intentional acts of the government agents were illegal. Nevertheless, the Court held that they were acting within the scope of their employment under federal law. *Id.* at 180, 76 S.Ct. 745. The Court explained that:

> The fact that the agents did not have actual authority for the procedure they employed does not affect liability. There is an area, albeit a narrow one, in which a government agent, like a private agent, can act beyond his actual authority and yet within the scope of his employment. We note that § 1346(b) provides for liability for 'wrongful' as well as 'negligent' acts. *Id.* at 180–81, 76 S.Ct. at 751.

Although the Government baldly asserts that the activities at issue here should fall outside *Hatahley's* "narrow" range, it offers no principled way to distinguish the illegal intentional acts here from the illegal intentional acts for which the United States

---

5. For purposes of this motion to dismiss, the government concedes that the complaint, which alleges illegal acts by government employees, must "be taken as true." Points and Authorities in Support of Defendant's Motion to Dismiss at 3. Although I am aware that the Justice Department has declined to prosecute those CIA agents involved, *see* Department of Justice, Report of the Department of Justice Concerning Its Investigation and Prosecutorial Decisions with Respect to Central Intelligence Agency Mail Opening Activities in the United States (January 14, 1977), the plaintiff is, of course, not bound by that decision and is entitled to present evidence which he maintains leads to the conclusion that the CIA's activities were illegal at the time that they occurred. Whether or not the government should be liable for illegal acts carried out by employees acting in good faith is not an issue before the court at this time. *See generally Hatahley v. United States,* 351 U.S. 173, 176, 76 S.Ct. 745, 100 L.Ed. 1065 (1956).

incurred liability in *Hatahley*. Therefore, this Court holds that the alleged activities set forth in the complaint fall within the purview of the waiver of sovereign immunity in Section 1346(b).

■ The Court's conclusion is reinforced by the jurisdictional trend in determining what acts fall within the scope of a person's employment. Although in the past some courts found that an illegal act could not be within the scope of an agent's employment because the employer could not authorize his employees to break the law, the modern and expanding view is to hold an employer liable for the intentional torts of his employees if the employee was motivated by a desire to help his employer, *see* Prosser, *Law of Torts* § 70 at 464–65 (4th ed. 1971), or if it is fair to shift the loss from the victim to the employer. *See, e. g., Ira S. Bushey & Sons, Inc. v. United States*, 276 F.Supp. 518 (E.D.N.Y.1967), *aff'd*, 398 F.2d 167 (2d Cir. 1968). *But see Wrynn v. United States*, 200 F.Supp. 457, 465 (E.D.N.Y. 1961).[6] Under either theory, this Court finds that the alleged acts, if proved, would be within the scope of the agents' employment in this case.

### B. SECTION 2680(a): THE DISCRETIONARY FUNCTION EXCEPTION

The Government's second argument is that the decision to open plaintiff's mail illegally stemmed from a discretionary function of the CIA and, thus, the United States cannot be held liable for damages caused by the non-negligent execution of that decision. 28 U.S.C. § 2680(a) provides an exception to the general waiver of sovereign immunity contained in 28 U.S.C. § 1346(b). It states that Section 1346(b) does not apply to:

Any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

The Government notes that the CIA's function is counter-intelligence. Since the HTLINGUAL program was an outgrowth of that function, the Government maintains that Section 2680(a) bars any claim for damages.

■ Since the enactment of Section 2680(a), courts have had a great deal of difficulty in deciding what acts can be termed discretionary functions, and thus protected, and which acts cannot be so denominated. *See, e. g., Brown v. United States*, 374 F.Supp. 723, 728 (E.D.Ark.1974). The scope of the "discretionary function" has been broadly interpreted and the Government relies heavily on this line of cases. *See, e. g., Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). In *Dalehite*, the Supreme Court construed Section 2680(a) to preclude a suit to recover damages caused by the decision to use a highly explosive ammonium nitrate base in the government production of fertilizer. The Court explained that the purpose of Section 2680(a) is to protect "the discretion of the executive or the administrator to act according to one's judgment of the best course . . . ." 346 U.S. at 34, 73 S.Ct. at 967. Nevertheless, even in *Dalehite*, the Court recognized that the discretionary function exception does not extend to every decision which contains an element of judgment. *Id.* at 35–36, 73 S.Ct. 956. Otherwise, this exception would swallow up the rule of waiver of sovereign immunity since

**6.** According to *Williams v. United States*, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955), the law of the place where the act occurred determines the scope of an officer's employment. In this case, that place is apparently New York. This Court has not been able to discover any New York cases directly on point, a fact which is not surprising considering that it is only recently that the public has become aware of the extent of the CIA's domestic activities.

Each case must necessarily turn upon its own facts and the specific tort alleged. Due to the lack of explicitly controlling New York law, I have referred to more general common law. Nevertheless, the practice in New York seems to be in line with the modern trend. *See, e. g., De Wald v. Seidenberg*, 297 N.Y. 335, 79 N.E.2d 430 (1948). *Cf. Osipoff v. City of New York*, 286 N.Y. 422, 36 N.E.2d 646 (1941).

any act can in some way be called "discretionary". Only when "there is room for policy judgment and decision" is there a discretionary function which deserves protection from being tested through the vehicle of tort suits. *Id.* at 36, 73 S.Ct. 956. *See also Griffin v. United States*, 500 F.2d 1059, 1064 (3d Cir. 1974); *Simons v. United States*, 413 F.2d 531, 534 (5th Cir. 1969); *Brown v. United States*, 374 F.Supp. 723, 728–29 (E.D.Ark.1974).

 The precise issue presented in this motion to dismiss is whether or not Section 2680(a) should be construed so broadly that it protects a governmental decision to commit an illegal act. In the words of the *Dalehite* court, was there "room for policy judgment and decision" when the CIA determined that it would engage in the opening of citizens' mail? This Court would conclude that there was not.

To begin with, this conclusion seems indicated by the Supreme Court's decision in *Hatahley* In *Hatahley*, the Court noted that the Interior Department agents had not complied with the notice provisions of federal law when they rounded up and destroyed the plaintiffs' horses. The Court found that the failure to follow federal law, a fact which made the agents' subsequent actions illegal, took the decision outside the ambit of the discretionary function exception of Section 2680(a). In effect, the Court held that government agents do not have the discretion to break the law. 351 U.S. 181, 76 S.Ct. 745.[7]

 More importantly, if this country has learned nothing else in the past decade, it has learned that no man, nor any man acting on behalf of our government, is above the law. The Government should not have the "discretion" to commit illegal acts whenever it pleases. In this area, there should be no policy option. Nevertheless, if the Government's argument were accepted in this case, that would be the effect of this Court's decision. Although Congress has certainly given the CIA a broad mandate to do whatever is necessary to gather intelligence around the world, this Court refuses to accept the proposition that it can do anything.[8] This Court therefore holds that Section 2680(a) does not preclude suits for damages caused by illegal acts committed by government officials. The Court further holds that there is no exception to this rule for the acts of the CIA.

## C. SECTION 2680(b)

 The Government also argues that Section 2680(b), which excepts from the waiver of sovereign immunity "[a]ny claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter. .. . ." would operate to bar the claim in this case. Such an interpretation of Section 2680(b), however, ignores the plain language of the statute. The section reads "loss, miscarriage, or negligent transmission." Plaintiff is not suing for a delay in transmission, the misplacing, or the loss

**7.** This Court's research has only disclosed one published opinion which held that § 2680(a) barred a suit for damages caused by the illegal decision of a government official. In *Kiiskila v. United States*, 466 F.2d 626 (7th Cir. 1972), a military base commander had unconstitutionally excluded the plaintiff from her job on a military base. The court held that a commander has wide discretion to exclude people from his base. It thus felt that § 2680(a) precluded a claim for damages based on the unconstitutional exercise of that discretion. The *Kiiskila* court did not make reference to *Hatahley, supra. Kiiskila* is not controlling in this Circuit and I decline to follow it.

 I am also aware of three other opinions dealing with facts similar to this case. *Norman Hardy v. United States of America*, Civ. No.76–1423 (D.D.C. February 14, 1977), and *Norman*

*Murphy v. Central Intelligence Agency*, No. C. 76–12 (N.D.Iowa May 28, 1976) both held that § 2680(a) barred claims for illegal mail opening, but those cases did not focus on the issue of illegality. In addition, in the *Murphy* case, upon which the *Hardy* decision relied, the plaintiff appeared *pro se* and did not resist the motion to dismiss. In *Julia Siebel v. United States*, No. C–76–1737 SC (N.D.Cal. December 17, 1976), Judge Conti also held that § 2680(a) barred a claim for damages for similar allegedly illegal acts. Although Judge Conti did discuss the possible illegality of the government's act, he did not consider the impact of *Hatahley, supra.* I respectfully disagree with his decision.

**8.** *See also* 50 U.S.C. § 403(d)(3) (1970).

of his letters. Rather, he is suing for the invasion of his privacy caused by the fact that the agents deliberately opened and photographed his mail. The instant situation is not covered by this section. Neither *Marine Insurance Co., Ltd. v. United States,* 378 F.2d 812 (2d Cir.), *cert. denied,* 389 U.S. 953, 88 S.Ct. 335, 19 L.Ed.2d 361 (1967), nor *Goodman v. United States,* 324 F.Supp. 167, 171–72 (M.D.Fla.), *aff'd,* 455 F.2d 607 (5th Cir. 1971), cited by the Government to support its argument, persuade this Court to rule to the contrary. *Marine Insurance* simply held that Section 2680(b) applied to prevent a claim for loss when a package was removed from the course of the mails, and then returned and subsequently lost in the ordinary course of events. Similarly, *Goodman* did not extend the meaning of Section 2680(b) beyond its plain language. That case simply dismissed a number of claims, including misdelivery of the mail, on several grounds, including Section 2680(b). Therefore, this Court holds that the instant claim for invasion of privacy is not barred by the postal exception contained in Section 2680(b).

### D. SECTION 2680(h) AND INTENTIONAL TORTS

■ The Government's final argument is that 28 U.S.C. § 2680(h) (Supp.1975) bars claims for damages caused by intentional torts. That section provides an exception to the waiver of sovereign immunity for:

Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided,* That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

Although invasion of privacy is not one of the torts listed as being excluded in Section 2680(h), the United States argues that the Court should construe an implied exception for the CIA's intentional (and allegedly illegal) invasion of privacy in this case.

This Court is not persuaded that such an exception can or should be implied in Section 2680(h). If Congress had wished to bar claims for all intentional torts instead of just those claims enumerated, it could easily have said so. A number of courts have held that those intentional torts not enumerated are not excluded and thus must be allowed. *Black v. United States,* 389 F.Supp. 529, 531 (D.D.C.1975) (trespass and invasion of privacy); *Ira S. Bushey & Sons, Inc. v. United States,* 276 F.Supp. 518, 526 (E.D.N.Y.1967), *aff'd,* 398 F.2d 167 (2d Cir. 1968) (trespass); *United States v. Ein Chemical Corp.,* 161 F.Supp. 238, 245–47 (S.D.N.Y.1958) (conversion). *See also Hatahley, supra,* 351 U.S. at 181, 76 S.Ct. 745; *Laird v. Nelms,* 406 U.S. 797, 801–02, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972) (dictum).[9] *But cf. Anderson v. United States,* 548 F.2d 249, 252 (8th Cir. 1977), *petition for cert. filed,* 45 U.S.L.W. 3720 (U.S. April 27, 1977). If Congress had intended to include invasion of privacy among the other enumerated intentional torts in Section 2680(h), it could have done so three years ago when it amended the statute. *See* Act of March 16, 1974, Pub.L. 93–253, § 2, 88 Stat. 50, *now codified* in 28 U.S.C. § 2680(h) (Supp.1975). Invasion of privacy is not such a new cause of action, as the Government implies, that it can now be presumed to catch Congress by surprise. Moreover, even if this were a case of first

---

9. The cases cited by the Government are not on point. They deal with torts explicitly enumerated in § 2680(h). *See, e. g., Kessler v. General Services Administration,* 341 F.2d 275 (2d Cir. 1964); *Dupree v. United States,* 264 F.2d 140, 142–43 (3d Cir. 1959), *reh. denied,* 266 F.2d 373 (3d Cir.), *cert. denied,* 361 U.S. 823, 80 S.Ct. 69, 4 L.Ed.2d 67 (1959).

impression and there was no history concerning implied exceptions to the waiver of sovereign immunity, this Court does not feel that this is a proper case for such an exception here. Accepting the allegations of the complaint, we are dealing with the commission of a series of illegal acts by agents of the Government.[10] Justice would certainly not countenance a court straining the language of a statute in order to deny the victim of such illegality at least some measure of compensation. This Court therefore holds that the claim in this case is not barred by the provisions of Section 2680(h).

### III. CONCLUSION

For all of the reasons given above, the defendant's motion to dismiss is without merit and therefore should be denied. An appropriate order will issue.