Malcolm LITTLE, Jr., Plaintiff-Appellant,

v.

Daniel WALKER et al., Defendants-Appellees.

No. 76–1470.

United States Court of Appeals, Seventh Circuit.

Heard Dec. 8, 1976.

Decided March 25, 1977.

Rehearing and Rehearing En Banc Denied April 22, 1977.

**194**

Robert L. Graham, Chicago, Ill., for plaintiff-appellant.

William J. Scott, Atty. Gen., Raymond J. McKoski, Asst. Atty. Gen., Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, and SWYGERT and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff, then an inmate of the Illinois State Penitentiary in Stateville, Illinois, filed this civil rights class suit under 42 U.S.C. § 1983 on January 17, 1973. Affidavits filed by plaintiff and by some of the purported class members paint an ugly picture of constant physical attacks and sexual assaults by other inmates. Leave to prosecute the case as a class action was denied; that order of the district court is not questioned in this appeal. On March 29, 1976, plaintiff was placed on parole and therefore is no longer seeking equitable or declaratory relief.

In the amended complaint,[1] plaintiff alleged[2] that from May 1972 until his September 2, 1974, transfer to the Menard Correctional Center, he and other inmates at Stateville "repeatedly suffered acts and threats of physical violence, sexual assaults, and other crimes perpetrated by other inmates from whom plaintiffs were not reasonably protected by defendants." The de-

1. The amended complaint was filed on November 30, 1973. Richard L. Whitley was a co-plaintiff as late as March 25, 1974 (R. 64). By at least November 11, 1975, Little was the only plaintiff.

2. All facts alleged of course are taken as true for purposes of our review of the granting of the motion to dismiss below. *Walker Process Equip. v. Food Machinery and Chemical Corp.,* 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247.

fendants consist of the Illinois Department of Corrections, its director and former director, the Governor of Illinois, the Warden of the Stateville Penitentiary and his predecessor, the Superintendent of the Stateville Prison, the administrative assistant to the Warden, the chairman of the Stateville Institutional Assignment Committee, and six members of the Disciplinary Committee of the Stateville Prison. The complaint alleged that plaintiff and fellow inmates lived in constant and imminent fear of physical violence and sexual assaults, "especially when inflicted by gang-affiliated inmates."

Defendant Chairman of the Institutional Assignments Committee of the prison supposedly ordered plaintiff and others to work in certain areas of the penitentiary that were controlled by gang-affiliated inmates. Because of fear for their personal safety, plaintiff and others refused to comply with such work assignments and were then committed to isolation and other grievous punishment "at the direction of the Disciplinary Committee." To avoid violence-prone and gang-affiliated inmates as well as Disciplinary Committee punishment for refusal to accept work assignments in gang-controlled areas, plaintiff and other inmates accepted placement in "Segregation-Safekeeping" status, sometimes in excess of one year. Such status resulted in:

"(a) Denial of access to religious services, ministrations, and sacraments;

"(b) Denial of all opportunities of a rehabilitative nature, including educational and vocational instruction;

"(c) Denial of adequate medical and dental treatment;

"(d) Denial of adequate means with which to maintain their cells in a clean and sanitary condition;

"(e) Denial of essentials necessary for personal hygiene, including access to shower facilities at least once a week;

"(f) Denial of access to the prison dining room or to warm food served in a sanitary manner;

"(g) Denial of all indoor or outdoor recreational activity;

"(h) Denial of effective access to the prison law library and legal materials contained therein;

"(i) Denial of opportunities for parole, work release program or transfer to a minimum security unit or institution." (Amended Complaint ¶ 20.)

Defendants made no distinction between disciplinary and protective segregatees, thereby subjecting plaintiff to the same restrictions and deprivations imposed on inmates who had committed disciplinary infractions.[3]

Those placed in Segregation-Safekeeping status were confined by defendants in gallery 6 of cell-house B where the inmates most prone to violence are also housed. Those in Segregation-Safekeeping status had meals served to them in their cells by gang-affiliated inmates who "withhold meals from plaintiffs unless plaintiffs perform unnatural sexual acts through the cell bars." Defendants ignored plaintiff's entreaties to remedy the situation.

According to the complaint, on September 6, 1973, through defendants' failure to afford reasonable protection, cell-house B was seized by a group of rebellious inmates for nine hours while gang rapes were inflicted on other inmates. Plaintiff's personal property, including legal materials, was destroyed and confiscated. After the rebellion, defendants nevertheless continued to confine plaintiff in the same area with those inmates in disciplinary segregation who had instigated the uprising.

The complaint alleged that Little and other inmates were deprived of their constitutional rights to due process of law, equal protection of the laws, freedom from cruel and unusual punishment, free exercise of religion, freedom of speech and freedom of

---

**3.** Plaintiff does not directly attack the constitutionality of depriving a protective segregatee of the same privileges as those withheld from a disciplinary segregatee. "Concerning those deprivations of privileges, plaintiff only seeks damages for defendants' subjective bad faith in imposing those deprivations upon him while in voluntary segregation" (Reply Br. at 4–5).

assembly. The complaint also charged that defendants violated the Illinois Constitution and certain Illinois statutes, and that defendants acted with malice or reckless disregard for the rights of Little and others. Plaintiff asserted that seven defendants[4] knew or should have known of these abuses and failed to correct them. In sum, the plaintiff maintains these officials failed to provide him reasonable protection from violent inmates and that they subjected him to impermissible privations while in protective segregation. Numerous affidavits were filed to substantiate the charges, and opposing affidavits were filed by some defendants. Plaintiff and his fellow inmates sought compensatory damages of $25,000 and punitive damages of $10,000 apiece, plus costs and reasonable attorneys' fees.

On October 22, 1975, the district court rendered a memorandum opinion refusing to grant defendants' motion to dismiss or for summary judgment on their theory that it was not unconstitutional to cause protective segregatees to suffer the same limitations of general prison privileges imposed on disciplinary segregatees. Judge Decker pointed out that prison segregation units are not *per se* unconstitutional and that the concomitant restrictions of prisoner rights in isolation are only impermissible when of a character to shock the conscience or when intolerable in fundamental fairness. Yet the district court also noted that plaintiff was complaining that restrictions for inmates segregated for disciplinary reasons should not be applied to those, as here, who are in segregation for protective purposes. But since the remaining claim, even assuming its validity, was only for damages, the court addressed the issue of official immunity from damage actions under Section 1983. Citing *Knell v. Bensinger*, 522 F.2d 720, 724–725 (7th Cir. 1975), the Court held

that defendants would be immune from damages under Section 1983 if they acted sincerely and with the belief that they were doing right, unless they acted with such disregard of the plaintiff's clearly established constitutional rights that their actions could not reasonably be characterized as being in good faith.[5] Judge Decker ordered further briefing on the official immunity issue.

In a second memorandum opinion handed down on March 8, 1976, the district court decided that defendants did not fail to apply the law as it existed at the time because *Breeden v. Jackson*, 457 F.2d 578 (4th Cir. 1972), held that there was "nothing impermissible in denying voluntary segregees [sic] the same rights denied to those segregated because of their dangerous characteristics"[6] (mem. op. at 2). Echoing the Supreme Court's admonition in *Pierson v. Ray*, 386 U.S. 547, 557, 87 S.Ct. 1213, 18 L.Ed.2d 288, the district court refused the imposition of a requirement on defendants which it characterized as a "guess that the dissenting opinion in the leading case might be adopted years later in another circuit" (mem. op. at 2).

The district court also found that defendants were not motivated by actual malice. The opinion concluded by holding that plaintiff was not entitled to money damages because he had not satisfied the requirements of *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214, as made applicable to prison officials by *Knell v. Bensinger, supra*. Accordingly, defendants' motion to dismiss was granted. This appeal followed. We reverse and remand.

As noted, the principal reason for the dismissal of the amended complaint was the opinion in *Breeden v. Jackson*, 457 F.2d 578, 580 (4th Cir. 1972). The petitioner there

---

**4.** The Governor of Illinois, the Director of the Department of Corrections and his predecessor, the Warden and his predecessor, the Superintendent of the Stateville Prison and the administrative assistant to the Warden.

**5.** The *Knell* standard was derived from *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 43 L.Ed.2d 214.

**6.** Nevertheless, Judge Decker noted that Judge Craven's dissent in *Breeden* has continued to gain support in the Fourth Circuit. See *Woodhous v. Commonwealth of Virginia*, 487 F.2d 889 (4th Cir. 1973).

was voluntarily transferred from the general prison population to maximum security because of threats of bodily harm from other inmates. The majority opinion denied him equitable relief or damages because his complaints only "related to limited recreational or exercise opportunities, the prison menu and restricted shaving and bathing privileges."[7] In sharp contract, Little's alleged treatment was so unreasonable as to be characterized as vindictive, cruel or inhuman or so intolerable in fundamental fairness that even the *Breeden* majority would have found a violation of his constitutional rights. See 457 F.2d at 580–581. In any event, Judge Craven's dissenting opinion in *Breeden* now appears to have been the rule in the Fourth Circuit since July of 1973. See the 1973 opinion in *Woodhous, supra.*

■ Here the crucial time period for purposes of damages is from May 1972 to September 1974 when Little was transferred to Menard. During that period, it was already well settled that the treatment he received while in Segregation-Safekeeping status was cruel and unusual punishment. See the 1963–1970 authorities cited in *Breeden, supra,* 457 F.2d at 580–581 nn. 6–9; see also *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652. And there is no doubt of the continuing validity of Chief Judge Fairchild's stricture in *Knell v. Bensinger,* 522 F.2d at 725:

"[I]n exercising their informed discretion, officials must be sensitive and alert to the protections afforded prisoners by the developing judicial scrutiny of prison conditions and practices."

Thus while an official "has, of course, no duty to anticipate unforeseeable constitutional developments" (*O'Connor v. Donaldson,* 422 U.S. 563, 577, 95 S.Ct. 2486, 2495,

45 L.Ed.2d 396), he cannot hide behind a claim that the particular factual predicate in question has never appeared *in haec verba* in a reported opinion. If the application of settled principles to this factual tableau would inexorably lead to a conclusion of unconstitutionality, a prison official may not take solace in ostrichism.

■ Such asserted ignorance cannot provide a doctrinal safe harbor to the defendants here. It has been both a settled and first principle of the Eighth Amendment, long before the relevant 1972–1974 period in the instant case, that penal measures are constitutionally repugnant if they "are incompatible with 'the evolving standards of decency that mark the progress of a maturing society,' or [if they] 'involve the unnecessary and wanton infliction of pain.'" *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (citations and footnotes omitted). Violent attacks and sexual assaults by inmates upon the plaintiff while in protective segregation are manifestly "inconsistent with contemporary standards of decency." *Id.* "Deliberate indifference" to these happenings "constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Id.* Moreover, in the highly publicized landmark case of *Holt v. Sarver,* 442 F.2d 304, 308 (8th Cir. 1971), it was held that under the Eighth Amendment prisoners are entitled to protection from the assaults of other prisoners. See also *Kish v. County of Milwaukee,* 48 F.R.D. 102, 103–104 (E.D.Wis.1969), subsequent disposition affirmed, 441 F.2d 901 (7th Cir. 1971). Therefore, it is immaterial that Little himself sought refuge in the segregated part of Stateville for bodily protection. On remand, if Little can show that he was deliberately deprived[8] of constitutional rights

---

7. Breeden also complained that he suffered a denial of any opportunity for parole while he was confined in maximum security at his own request. However, the State established that he was not so prejudiced and, in fact, had been released on parole.

8. In this opinion we use the term "deliberate deprivation" to denote two species of culpabili-

ty: actual intent and recklessness. *Kimbrough v. O'Neil,* 545·F.2d 1059, 1061 and n. 4 (7th Cir. 1976) (*en banc*). Actual intent here encompasses both the special intent to deprive the plaintiff of his constitutional rights as well as the general intent to perform the conduct whose "natural consequence" is the deprivation of the plaintiff's constitutional rights. See *Monroe v. Pape,* 365 U.S. 167, 187, 207, 81

while confined in cell-house B, he will be entitled to damages.[9]  *Black v. Brown,* 513 F.2d 652, 654–655 n. 6 (7th Cir. 1975).

■ Since constitutional developments prior to the May 1972-September 1974 period had crystallized in Little's favor, defendants should have known that their actions within the sphere of their official responsibility would violate his constitutional rights. *O'Connor v. Donaldson,* 422 U.S. 563, 577, 95 S.Ct. 2486, 45 L.Ed.2d 396. Because under the facts alleged defendants have not met an objective good faith standard (*Knell v. Bensinger, supra,* at 725), Little need not show whether they had a malicious intent or impermissible motivations.  *Wood v. Strickland, supra,* 420 U.S. at 322, 95 S.Ct. 992. We leave it to the district judge to determine on a fuller record which, if any, of the fifteen defendants [10] was immune or too remotely involved to be held liable.

Reversed and remanded for further proceedings consistent herewith.

S.Ct. 473, 5 L.Ed.2d 492; *Bonner v. Coughlin,* 545 F.2d 565, 567 (7th Cir. 1976) (*en banc*).

Under *Wood v. Strickland, supra,* and *Knell v. Bensinger, supra,* recklessness under Section 1983 comprehends only an objective standard: whether the conduct is with "such disregard of the [plaintiff's] clearly established constitutional rights that [the] action cannot be reasonably characterized as being in good faith." 420 U.S. at 322, 95 S.Ct. at 1001; 522 F.2d at 725. The subjective standard sometimes a part of definitions of recklessness, corresponding to "white heart/empty head" good faith, is not an appropriate component of the definition of reckless behavior sufficient to state a claim under Section 1983 for the deprivation of constitutional rights. Cf. *Sundstrand Corp. v. Sun Chemical Corp.,* 553 F.2d 1033, 1045 (7th Cir. 1977). While mere inadvertence or negligence cannot support a Section 1983 action raising Eighth Amendment issues, deliberate indifference "[r]egardless of how evidenced"— either by actual intent or recklessness—will

provide a sufficient foundation.  *Estelle v. Gamble,* 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251, and authorities cited by Justice Marshall at 4025 nn. 10–12; see also *Hampton v. Holmesburg Prison Officials,* 546 F.2d 1077 (3d Cir. 1976); *Smart v. Villar,* 547 F.2d 112 (10th Cir. 1976).

9. See *La Batt v. Twomey,* 513 F.2d 641–645 (7th Cir. 1975); *Thomas v. Pate,* 493 F.2d 151, 159–161 (7th Cir. 1974), certiorari denied *sub nom. Thomas v. Cannon,* 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119; *United States ex rel. Miller v. Twomey,* 479 F.2d 701, 716–721 (7th Cir. 1973), certiorari denied *sub nom. Gutierrez v. Dep't. of Public Safety of Illinois,* 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102; *Wright v. McMann,* 387 F.2d 519 (2d Cir. 1967).

10. Only the seven defendants listed in note 4 *supra* were alleged to have actual or constructive knowledge of the material events detailed in the amended complaint.