**Roger James CLINE, Plaintiff**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, et al.; Federal Bureau of Prisons: Norman A. Carlson, Individually and as Director of the Federal Bureau of Prisons; and Donald Herman, United States Marshal, For the District of South Dakota, and Two Unknown (Agents) Marshals, Individually and in Their Official Capacity, Defendants**

No. 79–5012.

United States District Court,
D. South Dakota, W. D.

Nov. 4, 1981.

Roger James Cline, pro se.

Reed A. Rasmussen, Asst. U. S. Atty., Rapid City, S. D., for defendant.

MEMORANDUM OPINION

DONALD J. PORTER, District Judge.

CASE SUMMARY

Plaintiff brought this combination civil rights suit and FTCA action for injuries he alleges he suffered while a federal prisoner in the Pennington County Jail in Rapid City, South Dakota.[1]  Having found the

---

1. For the earlier procedural history of this case, see *Cline v. Herman,* 601 F.2d 374 (8th Cir. 1979).

complaint to be grounded in negligence, the Court orders the allegations of civil rights violations dismissed, but denies the motion of the United States for summary judgment as to the FTCA claim.

## FACTUAL BACKGROUND

According to the allegations of the complaint, plaintiff was sentenced in U. S. District Court for the District of South Dakota to ten years imprisonment on October 6, 1977. The sentencing judge added, in the written judgment and commitment order, the phrase "The Court recommends that in view of the fact that Mr. Cline killed an Indian, it might be well for him to be kept separate from Indian inmates. It is the Court's intent that you be advised of this." Plaintiff was taken to the Pennington County jail to await transportation to a federal penitentiary by two "unknown" United States Marshals.[2] Quoting the allegations of the amended complaint[3] verbatim,

> In spite of the said recommendation from the U. S. District Court, and the Plaintiff, plea in fear of his life, not to be place in the housing area of the Indian Inmates, Plaintiff was draged by Two Unknown Offical, of the Pennington County Jail, while the Two Unknown Marshals look on. Plaintiff was then placed in the cell housing area inwhich the Indian Inmates was housed. The Two Unknown Mashals made no attemp to secure the Plaintiff safety.

These factual allegations were somewhat amplified in an affidavit plaintiff submitted in response to defendants' motion to dismiss. He stated that his sentence was imposed at about 4:00 p. m. on October 6, 1977, and that immediately thereafter the sentencing judge called defendant, his attorney, defendant Herman, and another marshal into chambers. According to the affidavit, the purpose of the conference was to determine whether plaintiff should be protected from Indians in the local jails. Plaintiff states he was then taken to a holding cell in the United State's Marshal's office, and that about an hour later, "Defendant Herman with another Marshall read the judgment" to plaintiff while he was still in the cell.

According to the complaint, shortly after he was placed in the county jail, plaintiff was severely beaten by two Indian inmates, and it is for this beating that plaintiff seeks damages, having alleged a violation of the Fifth and Eighth Amendments to the United States Constitution as well as an action under the Federal Tort Claims Act. Defendants have moved for dismissal or, in the alternative, summary judgment.

## DISCUSSION

### I.

### CONSTITUTIONAL CLAIMS

Plaintiff alleges that defendants violated his constitutional rights through "Gross Negligence that Constitutes a 'Deliberate Indifference' to the Indigent Plaintiff," that defendants " 'knowingly and negligently and deliberately' subjected the Plaintiff to serve [sic] assault, by Indian Inmates," and that defendants' actions were "intentional". "While pleadings in civil rights cases are to be liberally construed . . . they must contain more than mere conclusory statements and a prayer for relief." *Anderson v. Sixth Judicial District Court*, 521 F.2d 420 (8th Cir. 1975). "[W]here the allegations are conclusory in nature, the court has a duty to measure these allegations in light of the factual claims actually made." *Wilson v. Lincoln Redevelopment Corporation*, 488 F.2d 339 (8th Cir. 1973).

Clearly, the specific factual allegations plaintiff makes in direct support of his

---

**2.** By plaintiff's motion, the "unknown" marshals were named in the Complaint on September 30, 1981, although they have apparently not yet been served. In the interest of continuity, however, these marshals will continue to be described as "unknown" throughout this opinion.

**3.** These allegations do not vary significantly from the original complaint.

claims do little to support plaintiff's general allegations of knowing, intentional, or deliberate activity by defendants in violation of his civil rights. Plaintiff says only that "in spite" of the court's recommendation, he was placed in a housing area of the county jail where Indians were located. Plaintiff does not allege that the two "unknown" marshals, neither of whom he identifies with any of the marshals present in the sentencing judge's chambers or in the Marshal's office while the judgment was read to plaintiff, had actual knowledge of the wording of the judgment or knew that there would be Indians where plaintiff was. Plaintiff does not allege that defendant Herman ordered the "unknown" marshals to disregard the judgment, or that he expressly ordered that plaintiff be jailed with Indians. Nor does Plaintiff allege that the marshals knew that plaintiff would be beaten in the jail or had any reason to think that any Indian prisoner who might be in the jail would know the reason for plaintiff's incarceration. Plaintiff's mere statement that he was taken away by the jailers while the "unknown" marshals "looked on" is plainly insufficient to allege any knowing, intentional, or deliberate conduct on the part of defendants; the most that can be said of the complaint is that it alleges that "the marshals negligently subjected him to the assault of the jail's Indian inmates." *Cline v. Herman,* 601 F.2d at 375.

The issue is thus raised: can a claim for damages for civil rights violations be based on allegations of negligence? The Court turns for guidance first to the recent case of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).[4] In *Taylor,* the plaintiff claimed that "his property was negligently lost by prison officials in violation of his rights under the Fourteenth Amendment.... More specifically, he claimed that he had been deprived of property without due process of law." 451 U.S. at 529, 101 S.Ct. at 1910, 68 L.Ed.2d at 425. The Court noted that nothing in the fourteenth amendment "protects against all

deprivations of life, liberty or property by the State ... [its protection is] only against deprivations 'without due process of law'.... Our inquiry therefore must focus on whether the [plaintiff] has suffered a deprivation of property without due process of law. In particular, we must decide whether the tort remedies which the State of Nebraska provides as a means of redress for property deprivations satisfies the requirements ·of procedural due process." 451 U.S. at 536–37, 101 S.Ct. at 1913–14, 68 L.Ed.2d at 430.

Observing that the "fundamental requirement of due process is the opportunity to be heard and it is an 'opportunity which must be granted at a meaningful time and in a meaningful manner,'" 451 U.S. at 540, 101 S.Ct. at 1915, 68 L.Ed.2d at 432, the Court said that a hearing did not necessarily need to be held *before* a deprivation. In the case of a tortious deprivation of a prisoner's rights "as a result of a random and unauthorized act ... the loss is not a result of some established state procedure and the State cannot predict precisely when the loss will occur." *Id.* The Court said, however, that a meaningful *post-deprivation* hearing was still required, and that was what Nebraska had provided:

> The State provides a remedy to persons who believe they have suffered a tortious loss at the hands of the State.... Through this tort claims procedure the state hears and pays claims of prisoners housed in its penal institutions.... It is argued that the State does not adequately protect the respondent's interests because it provides only for an action against the State as opposed to its individual employees, it contains no provisions for punitive damages, and there is no right to a trial by jury. Although the state remedies may not provide the respondent with all the relief which may have been available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate

4. Though dealing with a claim under 42 U.S.C. § 1983, *Taylor* and other § 1983 cases based on constitutional amendments are analogous to actions brought directly under a constitutional amendment, which is the case here.

to satisfy the requirement of due process. The remedies provided could have fully compensated the respondent for the property loss he suffered, and we hold that they are sufficient to satisfy the requirements of due process.

451 U.S. at 543, 101 S.Ct. at 1917, 68 L.Ed.2d at 434.

This reasoning is directly applicable to plaintiff's allegation here of a violation of his Fifth Amendment rights. Though plaintiff may state the elements of a valid due process claim, he has available to him a means of redress for this deprivation which satisfies the requirements of procedural due process, and entitles plaintiff to be made whole for any injuries he may have suffered through the negligence of the marshals. This means, of course, is the Federal Tort Claims Act, under which plaintiff sues in the alternative. By making this remedy available to plaintiff, the United States has done all that due process in a case such as this requires. *Taylor*, 451 U.S. at 542, 101 S.Ct. at 1916, 68 L.Ed.2d at 433, citing *Bonner v. Coughlin*, 517 F.2d 1311, 1319 (7th Cir. 1975). As in *Taylor*, plaintiff's alleged deprivation "did not occur as a result of some established [federal] procedure." 451 U.S. at 543, 101 S.Ct. at 1917, 68 L.Ed.2d at 433–34. Instead, if any deprivation did occur, it happened as a result of a negligent failure of federal employees to either follow the court's directions or to comply with the statutory provisions dealing with the safety of prisoners, 18 U.S.C. §§ 4002, 4042. While, as with the Nebraska tort claims procedure, the FTCA will not provide plaintiff with a jury trial or punitive damages,[5] and the action is against the United States rather than individual defendants, relief he may have had by suing directly under the Fifth Amendment, this Court must hold that the FTCA can fully compensate plaintiff for any tortious loss he may have suffered in violation of his due process rights.

The case of *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), forecloses a similar ruling by this Court with respect to plaintiff's Eighth Amendment claim, since *Carlson* expressly held that the "FTCA is not a sufficient protector of the citizens' [Eighth Amendment] rights, and without a clear congressional mandate we cannot hold that [a person suing under that Amendment is] relegated . . . exclusively to the FTCA remedy." 446 U.S. at 23, 100 S.Ct. at 1474. Nonetheless, this Court takes the view that plaintiff's Eighth Amendment claim must also be dismissed.

The only Supreme Court case to yet consider the question of whether allegations of negligence state a claim under the Eighth Amendment is *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In that case, which addressed allegations that prison officials had failed to provide adequate medical treatment, the Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." 429 U.S. at 104, 97 S.Ct. at 291. On the other hand, the Court said, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment . . . a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to medical needs." 429 U.S. at 106, 97 S.Ct. at 292.

It was not clear, immediately following *Estelle v. Gamble* whether this requirement of "deliberate indifference" rather than "negligence" was restricted to prison medical mistreatment cases, or was applicable to all Eighth Amendment claims. *See Snyder v. Blankenship*, 473 F.Supp. 1208, 1212

---

5. It is unlikely that plaintiff would have been entitled to punitive damages in any event. "Something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage, such as spite or 'malice', or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that his conduct may be called willful or wanton. Lacking this element, there is general agreement that mere negligence is not enough." Prosser, *Torts*, 9–10 (4th ed. 1971).

(W.D.Va.1979); Comment, *Actionability of Negligence Under Section 1983 and the Eighth Amendment*, 127 U.Penn.L.Rev. 533 (1978). But in the case of *Little v. Walker*, 552 F.2d 193 (7th Cir. 1977), dealing with an inmate's complaint against prison personnel which alleged constitutional violations arising from "constant physical attacks and sexual assaults by other inmates", 552 F.2d at 194, the Seventh Circuit held that "[w]hile mere inadvertence or negligence cannot support a Section 1983 action raising Eighth Amendment issues, deliberate indifference '[r]egardless of how evidenced'—either by actual intent or recklessness—will provide a sufficient foundation." 552 F.2d at 198, n.8. The *Little* court defined "actual intent" as "both the special intent to deprive the plaintiff of his constitutional rights as well as the general intent to perform the conduct whose 'natural consequences' is the deprivation of the plaintiff's constitutional rights." 552 F.2d at 197, n.8. "Recklessness" the court defined as "conduct ... with 'such disregard of the [plaintiff's] clearly established constitutional rights that [the] action cannot be reasonably characterized as being in good faith.'" 552 F.2d at 198, n.8. *See also Patzig v. O'Neil*, 577 F.2d 841, 847–48 (3rd Cir. 1978) ("In order to establish a constitutional violation under the eighth amendment, it is necessary that there be a deliberate indifference to the prisoner's needs ... police personnel may have acted negligently, perhaps even callously; but such actions do not amount to the 'intentional conduct characterizing a constitutional infringement.'")

A considerable number of courts have now followed the Seventh Circuit's lead in *Little*, and have held that Eighth Amendment claims require more than negligence as a basis. *See, e. g. Turpin v. Mailet*, 619 F.2d 196, 201 (2d Cir. 1980); *Redmond v. Baxley*, 475 F.Supp. 1111, 1117 (E.D.Mich. 1979); *Doe v. Lally*, 467 F.Supp. 1339, 1356 (D.Md.1979); *West v. Rowe*, 448 F.Supp. 58 (N.D.Ill.1978); *Stevens v. County of Dutch-*

*ess, N. Y.*, 445 F.Supp. 89, 93 (S.D.N.Y. 1977).

This Court's research has failed to unearth any Eighth Circuit opinions directly on this point. The cases that have been located, however, tend to suggest that the Eighth Circuit would align itself with the authority cited above.[6] In *Brown v. United States*, 486 F.2d 284 (8th Cir. 1973), a pre-*Estelle* case, for example, the court noted that "[e]ven if we assume that freedom from reasonably preventable inmate assaults is a federally secured right, we are extremely hesitant to hold that mere simple negligence can be the basis of personal liability under § 1983." 486 F.2d at 287. And in *Goodman v. Parwatikar*, 570 F.2d 801 (8th Cir. 1978), a § 1983 action where there were allegations of constitutionally inadequate medical treatment at a state medical hospital, the court said that if the plaintiff could prove "a deliberate indifference toward [the plaintiff's] serious medical needs, including protection from assault, on the part of those caring for her, then plaintiff will have proved that she was denied her constitutional right to a humane and safe living environment while confined under state authority." 570 F.2d at 804. The court did recognize the possibility that "the district court may eventually conclude, after more complete development of the facts, that plaintiff's claim is only one of negligence or malpractice at most. In such event, Section 1983 would not afford relief." 570 F.2d at 805. And finally, in *Ronnei v. Butler*, 597 F.2d 564 (8th Cir. 1979), the court affirmed the dismissal of a § 1983 prisoner complaint, saying that the "complaint, even when construed liberally in his favor, alleges nothing more than negligent or inadvertent conduct. His complaint may reflect a colorable tort claim in state court, but falls short of stating facts sufficient to make out a colorable claim of federal constitutional magnitude." 597 F.2d at 566. The court did, however, expressly not reach the question of whether

---

**6.** Though of perhaps small significance, it might be observed that in its opinion in an earlier phase of this case, the Eighth Circuit did cite *Little*. 601 F.2d at 376.

"negligent conduct can ever state a cause of action under 42 U.S.C. § 1983." *Id.*, n.2.[7]

■ Turning then to the allegations of this complaint, the Court must conclude that its factual claims, based so dominantly in negligence, cannot support an action under the Eighth Amendment. The conduct of the marshals, as described in the complaint and plaintiff's affidavit, cannot be considered to constitute 'deliberate indifference' to plaintiff's needs, whether that phrase is defined in terms of actual intent or recklessness. The actions complained of constitute, *at most*, simple negligence or inadvertance on the part of the marshals. It is therefore ordered that, insofar as the complaint purports to state a cause of action based on the Fifth or Eighth Amendments, it is dismissed.[8]

## II.

### FEDERAL TORT CLAIM ACTION

Following the Eighth Circuit opinion in this case, plaintiff did submit an administrative claim dated August 1, 1979 for his injuries to the United States Department of Justice and the Bureau of Prisons. Plaintiff alleges that it was denied on or about February 20, 1980. Defendants have also moved for dismissal or for summary judgment as to the FTCA portion of plaintiff's complaint.

■ It is clear, as defendants point out, that the FTCA authorizes *only* actions against the United States. 28 U.S.C. § 2679. The complaint must therefore be dismissed against defendants United States Department of Justice, Federal Bureau of Prisons, Norman A. Carlson, Donald Herman, and the two "unknown" marshals. It is also true that plaintiff has failed so far to name the United States as a party. While this might be grounds for dismissal of the entire action, *see Moriani v. Hunter*, 462 F.Supp. 353 (S.D.N.Y.1978), the Court will allow plaintiff thirty days in which to amend his complaint to name the United States as defendant.

The United States argues in support of its motion for summary judgment as to the FTCA action that the statement in the judgment and commitment order regarding plaintiff's separation from Indian prisoners was insufficient to create a legal duty on the part of the Government's employees. The United States also contends that the fact plaintiff's injuries were suffered in a county jail outside of direct federal custody relieves it of liability. Neither argument carries with it the weight of authority.

*United States v. Muniz*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963), established that "a person can sue under the Federal Tort Claims Act to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee."

---

7. *See also Mills v. Smith*, 656 F.2d 337 (8th Cir. 1981). In rejecting a plaintiff's eighth amendment claim which arose from an allegedly reckless shooting during an escape, the court noted that "required for a § 1983 action ... is the deprivation of a right, privilege, or immunity secured by the Constitution or laws of the United States. We do not think the record in the instant case shows any such deprivation, even assuming simple negligence on the part of [defendant]. A negligent action resulting in personal injury does not become a constitutional violation merely because the tortfeasor is a ... police officer." At 340, n.2.

8. It must also be observed that a separate ground of dismissal exists as to defendants United States Department of Justice, Federal Bureau of Prisons, Norman A. Carlson, Director of the Federal Bureau of Prisons, and Donald Herman. The only persons alleged to have had any direct involvement with plaintiff are the two "unknown" marshals. No "factual allegations" have been made showing an "affirmative link" between the actions of the two unknown marshals and the "adoption of any plan or policy by [the other defendants]—express or otherwise—showing their authorization or approval of such misconduct." *Rizzo v. Goode*, 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976). The doctrine of respondeat superior is inapplicable to constitutional claims such as plaintiff's, *Ronnei v. Butler*, 597 F.2d 564 (8th Cir. 1979); *Cotton v. Hutto*, 577 F.2d 453 (8th Cir. 1978), and in the absence of an allegation that the "known" defendants did some act personally which caused injury to plaintiff, the complaint must be dismissed as against all but the "unknown" marshals.

374 U.S. at 150, 83 S.Ct. at 1851. While it is true, as the Government points out, the Court in *Muniz* was dealing only with claimants in *federal* prisons, the courts have not hesitated to extend the scope of the FTCA to federal prisoners who, like plaintiff, were being temporarily held in local jails when they suffered their alleged injuries. In *Brown v. United States*, 486 F.2d 284 (8th Cir. 1973), the court ruled that an FTCA action could be pursued on the theory that "the government breached its duty to exercise reasonable care in providing for [a prisoner's] safety by placing him in a [county jail] that it knew or reasonably should have known was so inadequate that he could not be adequately protected from the foreseeable risk of assault by fellow prisoners." 486 F.2d at 288. On remand, the district court found that it was irrelevant whether the federal prisoners were held in a jail where the "Government had no authority to control the operation and management." 374 F.Supp. 723, at 729. The district court said that 18 U.S.C. § 4042 imposes upon the Government "a positive duty to use care for the safety of all federal prisoners and convicts regardless of whether they are confined in federal institutions or whether they are confined in State or local jails or penal institutions." *Id.* " 'Once the Government undertakes performance of an act entailing a duty of ordinary care it may not afterwards avoid liability under the Federal Tort Claims Act simply by abandoning the undertaking and attempting to attribute the responsibility to someone else.' " *Id.*

It is clear, then, that regardless of whether the sentencing judge's recommendations as to plaintiff's custody imposed any special duty on the United States marshals, the marshals had a general duty to ensure that plaintiff was held in secure surroundings. Liberally construing the complaint, the Court must find that plaintiff has adequately stated a claim against the United States for a negligent breach of this duty, and the government motion for summary judgment must therefore be denied. At the same time, the Court must also find that punitive damage claims in FTCA actions are barred by 28 U.S.C. § 2674, and therefore orders that the portions of the complaint seeking such be stricken.