**Alonzo WEAVER, Plaintiff,**

**v.**

**Pat JARVIS and Dr. Charles Allard, Defendants.**

**Civ. A. No. C82–438A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

March 12, 1985.

Tom West, Atlanta, Ga., for plaintiff.

George Dillard, Gail Flake, Decatur, Ga., Michael Bennett, Atlanta, Ga., for defendants.

## ORDER OF COURT

HORACE T. WARD, District Judge.

Alonzo Weaver, a state prisoner, commenced this action, pursuant to 42 U.S.C. § 1983, seeking to redress an alleged viola-

tion of his constitutional rights. The plaintiff claims that he was refused the right to adequate medical treatment while incarcerated at the DeKalb County Jail in 1980 and, as a result, is now legally blind. Weaver brings this action against the sheriff of DeKalb County (Pat Jarvis), who is responsible for maintaining and operating the county jail, and the doctor (Charles Allard) who treated him while he was in jail. The matter is now before the court on defendants' motions for summary judgment.

## BACKGROUND

Plaintiff Alonzo Weaver was confined in the DeKalb County Jail on or about February 21, 1980 on felony charges and remained in the jail until July 3, 1980, when he was transferred to a state prison facility. Plaintiff returned to the county jail about a week later and remained there until September 22, 1980, at which time he was again transferred into the custody of state officials for transport to a state prison facility. During the time plaintiff was incarcerated, defendant Jarvis was the Sheriff of DeKalb County and in charge of the jail. During 1980, defendant Allard was the physician under contract with DeKalb County to provide medical care for inmates.

Under the terms of his contract with the county, Dr. Allard had the responsibility for conducting sick call at the jail. Allard was generally present at the jail several times a week. In addition, the jail maintained a medical infirmary, which was staffed with six full time registered nurses, working under the direct supervision of defendant Allard. An inmate who desired medical treatment could sign the "sick call" sheet which was distributed daily throughout the cells or could send an individual request through a deputy at any time to the infirmary. Both the sick call sheets and individual requests would be received by the deputy on duty and transmitted directly to the medical infirmary, where the nursing staff would review the request and either treat same, based upon standing orders of the physician, or place the inmate's name on the list to be examined by the doctor.

In late March or early April, 1980, Weaver began to have aching and pain in his eyes and his vision began to blur. He states that he had never had any problem with his eyes before this time. Plaintiff sought medical attention by notifying the guard and by putting his name on the sick call list. Plaintiff states that he was not able to see the doctor for several weeks. Over the course of his confinement in the DeKalb County Jail, Weaver was seen by defendant Allard and/or members of his staff on four separate occasions. Allard diagnosed plaintiff's condition to be conjuntivitis and prescribed medication. No cultures were made and no diagnostic lab work was done to assist in the formulation of that diagnosis.

Medical treatment obtained by plaintiff subsequent to his confinement in the DeKalb County Jail has failed to identify the precise nature of plaintiff's eye disorder. After his entry into the state prison system, Weaver was sent to eye specialists at Talmadge Memorial Hospital. There, plaintiff was diagnosed as having permanent optic atrophy and the possibility of multiple sclerosis. Plaintiff is now legally blind. Plaintiff alleges that he was denied appropriate medical treatment while he was confined in the DeKalb County Jail, claiming that a proper diagnosis was not made and that Dr. Allard failed to refer plaintiff to an eye specialist.

## CONTENTIONS OF THE PARTIES

### Defendant Allard

Defendant Allard contends that the gist of plaintiff's complaint is that Weaver is claiming he should have received treatment in addition to or different from that administered to him by defendant Allard. As such, Allard contends, plaintiff has not established a cognizable claim under federal law. Allard states that no evidence shows that he knowingly disregarded any serious medical need; rather, he prescribed a course of treatment. Thus, Allard argues,

the fact that medical treatment was given to plaintiff precludes any finding of deliberate indifference to serious medical needs. Allard contends, then, that the adequacy and propriety of the choice of treatment is not an issue in a prisoner's medical attention case, and that once treatment has been provided any challenge to such course of treatment amounts to a mere difference of opinion between the prisoner and the treating physician, which disagreement supports no claim for relief under § 1983.

### Defendant Jarvis

Defendant Jarvis contends no deliberate indifference to serious medical needs has been shown with respect to the operation of the DeKalb County Jail. Jarvis argues that he has provided a comprehensive system of medical care for inmates at the jail. Jarvis further argues that the record before the court concerning plaintiff's medical care, which shows that plaintiff received treatment for his eye on four occasions, cannot be held to constitute such indifference to serious medical needs as offends "evolving standards of decency" on the part of Sheriff Jarvis. In addition, defendant Jarvis claims that he had no personal knowledge of or involvement in plaintiff's medical treatment and, that since he had no information or knowledge which would have led him to believe that plaintiff was receiving inadequate medical care, plaintiff's claim against him could only be based on a theory of vicarious liability based on the doctrine of respondeat superior, a theory of recovery which has been rejected in the context of § 1983 actions.

### Plaintiff Weaver

Plaintiff contends that defendants Jarvis and Allard were deliberately indifferent to the serious medical problems of plaintiff by the operation, maintenance and approval of a medical delivery system which was deficient because Dr. Allard was an overworked part-time contract physician. Plaintiff argues that the fact that defendants consciously and deliberately decided not to meet certain minimal requirements of the American Medical Association in the DeKalb County Jail, is further evidence of defendants' bad faith. Finally, plaintiff contends his treatment by Dr. Allard was deficient and constituted a deliberate indifference to his serious medical problem because plaintiff's requests for treatment went unheeded for up to two weeks, because his examination by defendant Allard was hurried and superficial, because no diagnostic tests were done, because no cultures were taken, because no medical history was taken, and because no explanation from plaintiff was allowed before the prison guard removed him from the doctor's office. Plaintiff asserts that his medical problem could, with reasonable medical certainty, have been caused by conditions in the jail facility and could have been identified at an early stage had appropriate medical procedures been used.

### DISCUSSION

It is obvious to the parties and the court that the applicable law in this case is that found in *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) and its progeny. *See* Order of Court, dated April 8, 1983. In *Estelle v. Gamble*, the Supreme Court held that a prisoner states a cause of action under 42 U.S.C. § 1983 for a deprivation of rights secured by the Eighth Amendment to the United States Constitution, and made applicable to the states by the Fourteenth Amendment, by showing conduct on the part of prison officials which manifests a deliberate indifference to the prisoner's serious medical needs. In the words of the Court:

> an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, *a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.* Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. *In order to state a cognizable claim, a prisoner must allege acts*

*or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.* It is only such indifference that can offend "evolving standards of decency" in violation off the Eighth Amendment.

*Id.* at 105–06, 97 S.Ct. at 291–292 (footnote omitted) (emphasis added). What may not be obvious, however, is what conduct will evidence actionable "deliberate indifference."

The defendants urge this court to conclude that a rendering of medical treatment by a licensed physician, regardless of the propriety of that treatment, compels the conclusion that no "deliberate indifference" can be shown. Such a position is neither consonant with those "evolving standards of decency" which the Eighth Amendment is designed to safeguard nor in line with the case law interpreting *Gamble v. Estelle.* While some cases suggest that where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments, it is obvious to this court that "in some cases the medical attention rendered may be so woefully inadequate as to amount to no treatment at all." *Westlake v. Lucas,* 537 F.2d 857, 860 n. 5 (6th Cir.1976) (citation omitted). As two commentators have noted:

> deliberate indifference can occur despite the provision of some medical treatment.... *[T]he mere provision of some medical care will not necessarily insulate against a finding of a constitutional violation;* grossly negligent treatment also may be constitutionally impermissible.

J. Gobert & N. Cohen, *Rights of Prisoners,* § 11.10 at 336 (1981) (footnote omitted) (emphasis added). *See also Murrell v. Bennett,* 615 F.2d 306, 310 n. 4 (5th Cir. 1980) (*"Gamble* does not necessarily excuse one episode of gross misconduct merely because the overall pattern reflects general attentiveness. The issue is whether the questioned conduct is cruel and unusual....").

■ This court determines that the Seventh Circuit's elaboration of the "deliberate indifference" standard, in *Little v. Walker,* 552 F.2d 193, 197 n. 8 (7th Cir.1977), *cert. denied,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 530 (1978), is both an appropriate interpretation of *Gamble v. Estelle* and in accordance with precedent binding upon this court. In *Little,* the court concluded that deliberate deprivation of constitutional rights "denote[s] two species of culpability: actual intent and recklessness." *Id.* (citation omitted). The court explained:

> Actual intent here encompasses both the special intent to deprive the plaintiff of his constitutional rights as well as the general intent to perform the conduct whose "natural consequence" is the deprivation of the plaintiff's constitutional rights.... [R]ecklessness under Section 1983 comprehends only an objective standard: whether the conduct is with "such disregard of the [plaintiff's] clearly established constitutional rights that [the] action cannot be reasonably characterized as being in good faith." The subjective standard sometimes a part of definitions of recklessness, corresponding to "white heart/empty head" good faith, is not an appropriate component of the definition or reckless behavior sufficient to state a claim under Section 1983 for the deprivation of constitutional rights. While mere inadvertence or negligence cannot support a Section 1983 action raising Eighth Amendment issues, deliberate indifference "[r]egardless of how evidenced"—either by actual intent or recklessness—will provide a sufficient foundation.

*Id.* (citations omitted). *See also Redmon v. Baxley,* 475 F.Supp. 1111, 1118 (E.D.Mich. 1979) (interpreting "deliberate indifference" to include "recklessness or callous neglect," and not limited to "intentional or malicious" conduct, in the context of a medical mistreatment case). *Cf. Miller v. Solem,* 728 F.2d 1020, 1024–25 (8th Cir. 1984) (holding deliberate indifference to constitutional rights will be shown where defendant actually intended to deprive

plaintiff of some right or where defendant acted with reckless disregard or callous indifference toward plaintiff's rights).

Turning now specifically to defendants' motions for summary judgment, the court is guided by the wellsettled principle that a "party moving for summary judgment has the burden of demonstrating that the Rule 56(c) test—'no genuine issue as to any material fact'—is satisfied and that he is entitled to judgment as a matter of law." 10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 2d § 2727, at 121 (1983) (footnote omitted). Because the burden is on the movant, the evidence presented to the court must be construed in the light most favorable to the party opposing the motion (in this case, the plaintiff); that party should be given the benefit of all favorable inferences that can be drawn from the evidence in the record. *See, e.g., Irwin v. United States*, 558 F.2d 249, 252 (5th Cir.1977). With this in mind, the court will now address each defendant's motion separately.

■ Based on the applicable legal standard governing defendant Allard's liability for the constitutional tort alleged in this case, the court concludes that the facts as presented to the court and the inferences which might be drawn from them are sufficiently in dispute to preclude summary judgment. Plaintiff has brought forth sufficient evidence from which it might be inferred that his symptoms were consistent with a number of disease processes which could result in optic atrophy and that this defendant acted recklessly in failing to perform any diagnostic test to determine the cause of plaintiff's eye pain. Plaintiff's contention, supported by deposition testimony and reference to a medical treatise, that defendant Allard failed to take a culture of his eye secretions, although such work-ups are often done in the defendant's private practice, raises a disputed issue of fact which, if resolved favorably to the plaintiff, might support a finding of deliberate indifference by the defendant doctor. Likewise, the extensiveness and adequacy of the medical examination, which is a fac-

tual issue disputed by the parties, is another issue in the case which, if resolved favorably to the plaintiff, would certainly be some evidence of recklessness. Therefore, it is the view of this court that in response to Dr. Allard's motion for summary judgment, plaintiff has produced sufficient evidence from which it might be concluded that Allard acted recklessly in the performance of his professional duties so as to evidence a deliberate indifference to a serious medical need. Because there are genuine issues of material fact in dispute and because defendant Allard's freedom from liability under 42 U.S.C. § 1983 cannot be determined as a matter of law, summary judgment in favor of this defendant is inappropriate.

Although the determination of the issue as to the other defendant is less clear-cut, the court is also of the view that Sheriff Jarvis' motion for summary judgment should not be granted. While it is clear that defendant Jarvis cannot be found liable under a theory of vicarious liability, the facts and any reasonable inferences which might be drawn from them, if viewed most favorably to the plaintiff, could provide a basis for finding Jarvis to have acted recklessly and with deliberate indifference to serious medical needs. There appears to be evidence in the record from which it might be concluded that overcrowding in the DeKalb County Jail had an adverse impact upon the delivery of medical care to prisoner, that defendant Jarvis never investigated to see if the overcrowding hampered the delivery of medical care, and that Jarvis, without consulting any medical doctors, decided not to meet certain minimal requirements of the American Medical Association which, had they been met, might have led to an early diagnosis of plaintiff's eye problem. Plaintiff also contends that his medical problem could, with reasonable medical certainty, have been caused by being forced to sleep on the floor of the jail where his eyes, hands and face would be subject to germs, dust and soot, all of which could have precipitated the disease process. These facts, if proved, might support a finding that jail conditions and oper-

ating procedures violated "evolving standards of decency" such that Sheriff Jarvis, as the person in charge of that facility, might be chargeable with conduct rising to the level of deliberate indifference to serious medical needs. *See, e.g., Hoptowit v. Ray,* 682 F.2d 1237, 1252–1254 (9th Cir. 1982). At this point, of course, it is enough for the court to conclude that because there are genuine issues of material fact in dispute and because it cannot be said that defendant Jarvis is not liable under 42 U.S.C. § 1983 as a matter of law, summary judgment in favor of this defendant is inappropriate.

## CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment are hereby DENIED.